## SMITH *v.* CROTTY.

That the testimony of one named in a nuncupative will as legatee is essential to lawfully proving the making thereof does not render his legacy void.

Argued February 2,—Decided March 1, 1901.

Probate of nuncupative will — appeal. Before Judge Falligant. Chatham superior court. August 6, 1900.

*W. H. Wade*, for plaintiff in error.
*Garrard & Meldrim*, contra.

LUMPKIN, P. J. This case as here presented turns upon the question whether or not a legacy given by a nuncupative will is void when the legatee is one of the essential witnesses by whose oaths the making of such will must be proved in conformity to the

requirements of section 3349 of the Civil Code. Where a nuncupative will embraces nothing except a bequest of the testator's entire estate to a single person, it would, of course, result that if the legacy be void, the will itself should be regarded as a nullity, and therefore not entitled to probate.

The determination of the question stated depends upon whether or not section 3275 of the Civil Code applies to nuncupative wills. That section embraces the following provision: "If a subscribing witness is also a legatee or a devisee under the will, the witness is competent, but the legacy or devise is void." If the language just quoted be applicable to a nuncupative will, a legacy or devise in such a will is void if the testimony of the legatee or devisee is indispensably necessary to proving the making of the will; and, as above indicated, if the will contains nothing but a declaration that such person shall be the sole beneficiary thereof, it can not be admitted to probate. On the other hand, if the section just mentioned has reference exclusively to written wills, it will follow, as we shall presently undertake to show, that a nuncupative will may be good even though a legatee thereunder is an essential witness to prove the making thereof, and also that he can not be deprived of his legacy. After careful consideration we have reached the conclusion that this section applies to written wills only. The use of the words "subscribing witness" strongly indicates that this is so. What is a "subscribing" witness? Clearly, one who writes his name under an attesting clause. Black's Law. Dic. 1131; 2 Bouv. Law Dic. 1059; 2 Abbott's Law Dic. 512; 2 Rapalje & Lawrence's Law Dic. 1230; Anderson's Law Dic. 985. There is nothing in the context to indicate any intention that the word "subscribing" should be understood otherwise than in its ordinary signification; and this being so, paragraph 1 of section 4 of the Political Code, which prescribes how all statutory enactments in this State shall be construed, furnishes the rule for ascertaining the meaning of this particular word as thus used, viz.: "The ordinary signification shall be applied to all words, except words of art, or connected with a particular trade or subject-matter, when they shall have the signification attached to them by experts in such trade, or with reference to such subject-matter."

It was, however, strenuously urged in the argument here that the term "subscribing," as used in section 3275, should be taken

as synonymous with the word "attesting." In support of this contention, it was insisted that, thus construed, the section would give effect to a sound policy of defeating all bequests or devises which had to depend for their validity upon the testimony of interested persons; but this argument is based upon the assumption that section 3275 was intended to apply to nuncupative wills, which is the very point in controversy, and we find no warrant for holding that the word "subscribing" should be given an interpretation such as would convey an idea radically different from that which it is usually employed to express. The above-quoted provision of section 3275 of the Civil Code was of force in this State prior to the passage of the evidence act of 1866. It appears in section 2386 of the Code of 1863. Save as in that section provided, interested persons were incompetent witnesses, and hence, with the exception indicated, all legatees and devisees were excluded from acting as such. As nuncupative wills were not favored, and it was ever the policy of the law to require strict proof of the making thereof, what end was to be subserved by providing that: "If a subscribing witness is also a legatee or devisee under the will, the witness is competent, but the legacy or devise is void"? Obviously, it was to save from total destruction wills which had been "subscribed" by one or more witnesses who were incompetent by reason of being interested under the will. Section 2383 of the Code of 1863, which in terms applied to written wills only, prescribed that the same should be "attested and subscribed in the presence of the testator by three or more competent witnesses." It can not be doubted that the word "subscribed," occurring in the phrase last quoted, was used in an altogether different sense than was the word "attested," for otherwise there would have been no occasion to use both terms. It would therefore seem that the word "subscribed," as used in section 2383, was employed with full knowledge of what it meant; and there is no reason whatever for even conjecturing that, in framing the law embraced in section 2386, the word "subscribing" was used in ignorance of its true meaning and was really intended to be understood as synonymous with the much broader term "attesting." Taking into view all of these considerations, it may with the utmost confidence be asserted that no court would, before 1866, have felt warranted in holding that section 2386 of the original code was intended to have

any reference to nuncupative wills. There would have been no reason for supposing that an intention existed to place such wills, looked upon as they were with disfavor and distrust, upon the same footing as written wills deliberately prepared and solemnly executed. If a change in pre-existing laws so little to be expected was really contemplated, certain it is that there is nothing in our statute law to manifest such an intention. On the contrary, the language actually used in the section under construction could not without straining have been held to bring about such a result. The meaning of the phrase "subscribing witness," which now appears in section 3275 of the Civil Code, is precisely the same as when used in section 2386 of the Code of 1863, and we think we have shown that its real purpose then was and now is to indicate a witness who attests the execution of a written will by writing his name under the attesting clause.

Just at this point we will briefly notice another argument presented by counsel for the defendant in error, to the effect that inasmuch as it is usually the practice for witnesses to a nuncupative will, after the same has been reduced to writing, to make oath to the correctness of the testamentary disposition therein set forth, and to subscribe their names to an affidavit prepared for this purpose, the words "subscribing witness" could be, in view of these facts, properly applied to wills of that character. The answer is that there is no provision of law requiring, or even contemplating, that the witnesses shall subscribe to such an affidavit. The practice which now obtains may be a good one and subserve a convenient end; but as it is not compulsory and rests upon a mere custom which has grown up independently of legislative direction, the fact that it is usually observed affords no aid in arriving at a proper construction of the law as it stands.

Let us now inquire what, under the Code of 1863, was requisite with regard to making and proving nuncupative wills. Section 2447 of that code is (with a single immaterial verbal expression) in precisely the same language as that now appearing in section 3349 of our present Civil Code. It declared that: "No nuncupative will shall be good that is not proved by the oaths of at least three competent witnesses that were present at the making thereof," etc. "An attesting witness to a will, in order to possess the requisite competency, should be of such character and have such

qualifications as would render his testimony admissible on occasions when the testimony of witnesses is ordinarily received." 29 Am. & Eng. Enc. L. 231. And the true test for determining the competency of an attesting witness is whether or not at the time of attestation he would be disqualified from testifying with reference thereto in a court of justice. *Gillis* v. *Gillis*, 96 *Ga.* 6. Under the Code of 1863, a legatee or devisee could not, except as above noted, be considered a competent witness to a will, for the reason already stated that he was disqualified by reason of interest. "Interest being a disqualification at common law, devisees and legatees under a will are regarded as incompetent attesting witnesses thereto, apart from statutory enactments to the contrary." 29 Am. & Eng. Enc. L. 233. Accordingly, up to the time of the passage of the "evidence act of 1866," no nuncupative will could be proved unless the essential facts as to the making thereof could be established by the testimony of the requisite number of disinterested witnesses. That act made a broad and sweeping change in our law of evidence. With specified exceptions, it entirely removed interest as a disqualification of witnesses; and, after its enactment, even a legatee was "competent" to testify as to the making of a nuncupative will. See, in this connection, *Brown* v. *Carroll*, 36 *Ga.* 568. This being so, and there being with reference to wills of this class no provision of law depriving an attesting witness of his legacy, it follows as an inevitable conclusion, not only that a legatee can no longer be considered an incompetent attesting witness to a nuncupative will, but that he is entitled to take his legacy if the will be duly established and admitted to probate. The same thing would have been true of legatees who were subscribing witnesses to written wills, but for the fact that section 2386 of the Code of 1863 expressly declared that, in such case, the legacies should be void, which provision of law has been carried forward into every succeeding code and has remained of force until this day, being now, as already seen, embraced in section 3275 of the Civil Code.

We are driven to the conclusion that it has thus come about that the law relating to witnesses to nuncupative wills who are also beneficiaries thereunder is more liberal than in the matter of written wills. It makes no difference whether this result has been accomplished by deliberate design or followed from a failure on the

part of the General Assembly to foresee the far-reaching effect of the "evidence act of 1866." There is here afforded considerable room for speculation; yet we do not feel disposed to indulge in it, or to pursue further this branch of the discussion. It is our duty to enforce the law as we find it written, and in so doing we feel constrained to hold that, relatively to a nuncupative will made at any time since the act just mentioned became of force, a legatee or devisee thereunder is not only a competent attesting witness, but, is also, if the will be duly proved, entitled to a legacy or devise thereby bestowed upon him. We are by no means prepared to say that such should be the law. If the lawmaking power should be of the opinion that a change is needed, it can easily make it.

The verdict complained of in the present case was necessarily controlled by a charge of the court directly antagonistic to the view of the matter herein expressed; and as a consequence the plaintiff in error is entitled to a new trial.

*Judgment reversed. All concurring, except Simmons, C. J., absent.*