### ESTATE OF EUGENE ZEILE, DECEASED.

[No. 5,125 (N. S.); decided February 1, 1910.]

Olographic Will—Attesting Witnesses.—A will properly executed in olographic form is entitled to probate as such, although it is witnessed and although the testator believed attestation necessary and intended the execution to be in the attested form.

Will.—The Term "Subscribing Witness" as used in Civil Code 1282, is synonymous with "attesting witness," as used in Civil Code, 1276, and has no reference to olographic wills.

Olographic Wills were First Permitted in California by the Civil Code of 1872, the provisions being adopted from the civil law.

Olographic Will—Legatee as Witness.—A gift to a legatee by an olographic will is not invalidated by his signing the instrument as a witness. Section 1282 of the Civil Code has no application to olographic wills.

Nathan M. Moran, for assignee of a legatee whose name was subscribed as a witness to an olographic will.

COFFEY, J.·  A will properly executed in the olographic form is entitled to probate as such, even though witnessed, and even though the testator believed the attestation essential and intended the execution to be in the attested form: Estate of Fay, 1 Cof. Pro. Dec. 428, and note; Estate of Soher, 78 Cal. 477, 21 Pac. 8; Estate of Dama, ante, p. 24.

The will of Eugene Zeile was not attested in due form of law and was admitted to probate solely as an olographic will: (See Certificate of Proof of Will; Order Admitting Will to Probate.)

The record in this proceeding therefore shows that there were no subscribing witnesses to this will in the sense in which that term is used in Civil Code, 1282.

The term "subscribing witness," as used in Civil Code, 1282, is synonymous with "attesting witness," as used in Civil Code, 1276, and has no reference whatever to olographic wills.

The words "subscribing witness," used exclusively in Civil Code, 1282, suggest that the legislature intends a broader operation to be given that section in contradistinction to the terms "attest" and "attesting witness" employed throughout Civil Code, 1276.

A glance at the history of the legislation, however, shows the opposite to be true:

Civil Code, 1282, is a verbatim re-enactment of section 5 of "An act concerning wills," passed April 10, 1850: Stats. 1850, page 177; Code Commissioner's note to Civ. Code, 1282; Hammond & Burch's Annotated Code of 1872.

The term "subscribing witness" has reference to section 3 of the same act, which is as follows:

"§ 3. No will, except such nuncupative wills as are mentioned in this act shall be valid, unless it be in writing and signed by the testator or by some person in his presence, and by his express direction, and *attested* by two or more competent witnesses *subscribing their names to the will,* in the presence of the testator."

It is here to be noted that our statutes at that date *made no provision for olographic wills.*

Olographic wills were first permitted in California by the Civil Code of 1872, the provisions being adopted from the civil law, as shown by the code commissioner's note to Civil Code, 1277.

"1277. An olographic will is one that is entirely written, dated, and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this state, and need not be witnessed. (NOTE—Code Civil, p.

970; 5 Toullion, N. 357; 1 Stu. Low., c. 327; 2 Bouvier Inst., N. 2139; La. Civ. Code, art. 1581. The tendency of the courts to recognize the desires of decedents, however informally expressed, as shown in note to sec. 1317, post, is one reason for the adoption of this section; and while it obviates many difficulties and annoyances, may not, and, indeed, it is confidently claimed in those countries where olographic wills are recognized, does not give rise to as many attempts at fraudulent will making and disposition of property as where it does not exist; simply because the testator's intentions are unknown.)''

In framing their provision for the attestation of wills, the code commissioners adopted with slight changes the more detailed provisions of David Dudley Field's Proposed Civil Code of New York, in which the term ''attesting'' is in each instance applied to the witnesses, in place of the less technical term ''subscribing'' used in section 3 of the act of 1850 quoted above: Proposed Civil Code of N. Y. (1865), sec. 550. The Field Code made no provision for olographic wills.

Civil Code, 1282, having therefore been preserved intact from a statute enacted over thirty years before olographic wills were recognized, it is plain that there was no intention on the part of the legislature ex industria to make that section applicable to a superfluous witness to an olographic will. *On the contrary, the intention of the framers of the Civil Code was "to recognize the desires of decedents, however informally expressed."*

The history of the disability of a witness to a will to take as a legatee or devisee thereunder, as having its basis in the common-law rule excluding an interested witness from testifying, leading to the result of invalidating many wills until legislation in England and in this country altered the situation by invalidating the gift and thus restoring the competency of the witness—is a familiar one, fully treated in the standard text-books, and need not be further noted here.

The next step in legislation and decision was *to remove the witness' disability to receive the gift provided the will could be proved by other competent evidence:* Caw v. Robertson, 5 N. Y. 125; Cornwell v. Woolley, 1 Abb. Ct. of App. Dec. 441, 43 How. Pr. 475, 47 Barb. 327; Matter of Owen, 48 App.

Div. 507, 62 N. Y. Supp. 919; 26 Misc. Rep. 179, 56 N. Y. Supp. 853.

From the brief history of legislation in California noted above, it is evident that the intention of our lawmakers was· to accomplish the result reached in New York and nothing more.

Testation in the present case was complete when the instrument had been entirely written, dated and signed by the hand of the testator himself. Nothing subsequently done by the legatee would add anything to its provisions or validity. It is no less reasonable to contend that an act of his could invalidate a gift to him any more than that he could invalidate the testator's whole will.

A minute search among the authorities fails to bring to light any exact precedent which would control the present case. This is undoubtedly due to the fact that olographic wills have been permitted in comparatively few jurisdictions.

An exactly parallel case is, however, to be found among the decisions on nuncupative wills.

The analogy is so strong in every particular that a portion of the decision (Smith v. Crotty, 112 Ga. 905, 38 S. E. 110) may be quoted with advantage: "This case, as here presented, turns upon the question whether or not a legacy given by a nuncupative will is void when the legatee is one of the essential witnesses by whose oaths the making of such will must be proved in conformity to the requirements of section 3349 of the Civil Code. Where a nuncupative will embraces nothing except a bequest of the testator's entire estate to a single person, it would of course result that, if the legacy be void, the will itself should be regarded as a nullity, and therefore not entitled to probate. The determination of the question stated depends upon whether or not section 3275 of the Civil Code applies to nuncupative wills. That section embraces the following provision: 'If a subscribing witness is also a legatee or a devisee under the will, the witness is competent, but the legacy or devise is void.' If the language just quoted is applicable to a nuncupative will, a legacy or devise in such a will is void if the testimony of the legatee or devisee is indispensably necessary to proving the making of the will; and, as above indicated, if the will contains nothing but a declara-

tion that such person shall be the sole beneficiary thereof, it cannot be admitted to probate. On the other hand, if the section just mentioned has reference exclusively to written wills, it will follow, as we shall presently undertake to show, that a nuncupative will may be good even though a legatee thereunder is an essential witness to prove the making thereof; and also that he cannot be deprived of his legacy. After careful consideration we have reached the conclusion that this section applies to written wills only. The use of the words 'subscribing witness' strongly indicates that this is so. What is a 'subscribing witness'? Clearly, one who writes his name under an attesting clause: Black's Law Dictionary, 1131; 2 Bouvier's Dictionary, 1059; 2 Abbott's Law Dictionary, 512; 2 Rapalje and Lawrence's Law Dictionary, 1230, and Law Dictionary, 985'': Smith v. Crotty, 112 Ga. 905, 38 S. E. 110.

Incompetency of a witness by reason of interest save in respect of attested wills has been expressly abolished in California: Code Civ. Proc. 1879.

If, therefore, the legacy to the witness Fargue is to be invalidated in the present case, it will be solely on the authority of Civil Code, 1282. This section, as we have seen from the history of its enactment, has no possible application to olographic wills. The reasoning of the supreme court of Georgia in the case last cited based on construction of terms alone leads most forcibly to the same conclusion.

Distribution decreed to assignee.

Olographic Wills are discussed in the note to Estate of Fay, 1 Cof. Pro. Dec. 432.

Attestation and Witnessing of Wills are discussed in the note to Estate of Fleishman, 1 Cof. Pro. Dec. 24.