H. Gray, J.
 

 The question here presented is, whether Caw, the appellant, whose name appears as a subscribing witness to the will of the late Margaret McPherson, is entitled to the legacy bequeathed over to him. For the purpose of determining this question, it is important, first, to consider, whether one who is, in reality, an attesting witness to a will, is, under any circumstances, entitled to a legacy under it. The revised statutes relating to wills of real and personal property, and the proofs of them, provide, first, for wills of real estate and the proofs of them; secondly, for wills of personal property and the probate of them; and then make provisions applicable to wills *of both real and personal property. These latter provisions require that every last will and testament, of real or personal property, shall be attested by at least two witnesses. (2 R.S. 63, § 40.) That portion which relates exclusively to wills of real estate and the proof of them, as originally enacted, required that all the witnesses to such will,
 
 *120
 
 living in this state and of sound mind, should be produced and examined. (2 R. S. 58, § 12.) That which relates to wills of personal estate, required the will to be proved by one or more of the subscribing witnesses. (Id. § 26.) By the same statutes, among the general provisions applicable to wills both of real and personal property, it is provided in § 50, that, “ if any person shall be a subscribing witness to the execution of any will, wherein any beneficial devise, legacy, interest, or appointment of any real or personal estate, shall be made to such witness,
 
 and such will cannot be proved without the testimony of such witness,
 
 the said devise, legacy, interest, or appointment shall be void, so far only as concerns such witness, or any claiming under him; and such person shall be a competent witness, and compel-lable to testify respecting the execution of said will,” &c.
 

 While § 12, above referred to, remained in force, a devise or bequest in a will disposing of real estate, to which the devisee or legatee was a subscribing witness, could be saved by the provisions of § 50, only where the devisee or legatee should be of unsound mind, or should reside out of the state, when the will was proved. This confined to very narrow limits the operation of that section, as applied to wills disposing of real estate; while the different method of proving wills of personal estate, under the provisions of § 26, gave effect to the 50th section in all cases where a single disinterested witness should satisfactorily prove the due execution of the will.
 

 Those two sections of the revised statutes (12th and 26th) were repealed by § 71 of the “ act concerning the Pr00^ *0^ wiUs>” (Laws 1837, c. 460), and the 10th and subsequent sections of that act substituted in their place. By § 10, two, at least, of the witnesses to the will (whether of real or personal estate), if so many are living in this state, and of sound mind, and not disabled from age, sickness or infirmity, from attending, are required to be examined; and provision
 
 *121
 
 is made, in other sections, for the examination, at their residence, of such as are disabled from attending at the surrogate’s office. By § 11, it is provided, that “ in case the proof of any will is contested, and any person having a right to contest the same shall, before probate made, file with the surrogate a request in writing, that all the witnesses to such will shall be examined, then, all the witnesses to such will, who are living in this state, of sound mind, and who are not disabled, from age, sickness or infirmity, from attending, shall be produced and examined.”
 

 By this change of the statutes, I think, the legislature designed to place the proof of wills of real and of personal property (as the formalities required at their execution had before been placed) on the same footing; and also to extend, in regard to wills of real estate, and
 
 limit,
 
 in regard to wills of personal estate, the benefits of § 50, before mentioned, to the cases where the execution of the will should not be contested, and where proof of its due execution could be made by the number of witnesses indispensable to its validity, without calling upon the witness claiming a beneficial interest under it. These things the act of 1837 accomplishes, and thus secures uniformity, not only in the proof of wills, but in the effect of provisions therein in favor of subscribing witnesses, whether they relate to real or to personal estate, or to both; and removes the incongruity which before existed between §§ 12 and 50. It may have been one object of the change, as was suggested by the learned justice who delivered the opinion in this cause in the court below, to relieve the executors or devisees having an interest in proving the *will, from the labor and expense of producing all the witnesses beyond two; but I' cannot think, that this was the chief inducemeht to the repeal of § 12. The simplicity and convenience of a uniform system in the proof of wills, both of real and personal property, and the more just
 
 *122
 
 and equitable application of the provisions of § 50, are reasons, which, in my judgment, must have operated with much greater force, in producing the change.
 

 If these views are correct, it is obvious, that the intention of the legislature was, to supersede the necessity of examining more than two witnesses, who should satisfactorily prove the will, unless the proof is contested by some one having the right to do so. The 17th section of the same act declares, that no will of real or personal estate shall be deemed proved, unless the witnesses to the same, residing within this state, competent to testify, shall have been examined as
 
 hereinbefore
 
 provided. When two witnesses are produced and examined, as required by § 10, by whom the will is satisfactorily proved, or when the proof of the will is contested, all the witnesses living in this state, competent to testify, and not disabled, are produced and examined, as provided in § 11, then the requisites of § 17, are complied with, so far as the necessity exists for the production and examination of witnesses.
 

 The court whose judgment is now the subject of review, referred to the 11th section of the act of 1837, rendering it necessary that all the witnesses to a will, living in the state, should be produced and examined, when any one having the right, should contest the proof of the will. This provision cannot prejudice .the appellant ; the contingency provided for in it, has not happened, and cannot, as the will has been proved, without contest, and the appeal day has passed. It is clear, therefore, that a will, either of real or personal estate, can be proved by two of the attesting witnesses, if no one having the right shall contest its proof; and that the rights of an attesting witness, who is a legatee, are saved, in all cases, except where the will
 
 cannot
 
 be proved without his testimony; *and hence, the question arises, whether the will of the testatrix could not have been proved, without the testimony of
 
 *123
 
 the appellant. The fact that all whose names appear as attesting witnesses to the will are legatees, cannot affect the rights of the appellant, if the contingency happened that rendered
 
 his
 
 testimony unnecessary. Where two of the attesting witnesses are not legatees, and a third is, it cannot be determined, that the will can be proved, without the testimony of the legatee, until the others are examined. In all cases, therefore, the right to the legacy must depend upon the due proof of the will, by the attesting witnesses who have been sworn. If the testimony of the two sworn, is not clear and satisfactory, then a case arises, in which the will cannot be proved
 
 without the testimony
 
 of the third; and then, and not before, the legacy becomes void.
 

 In the case before us, the surrogate, very properly, called the witnesses, in the order in which their names were subscribed, and if the two first called proved the will to the satisfaction of the surrogate, the third should not have been called as an attesting witness. The will of the testatrix should be carried out as far as possible, and when the contingency has happened, that each of two legacies bequeathed by her has been made void, neither reason or law requires that a third should be jeopardized or made void, for no other reason than because two have been lost; especially, when it comes within the saving clause of the same statute that avoided the others.
 

 The appellant, for the purpose of proving that he
 
 “
 
 was not sworn as a witness, on the probate of the will, and was not a legal witness” to its execution, offered in evidence the record of the surrogate of the proofs and examinations taken before him, on the proof of the will. The authenticity of the record, so far as due proof of it was concerned, was not disputed; but the evidence afforded by it was objected to, “ as improper and illegal;” the objection was overruled by the surrogate, and the proofs and examinations taken by him on the proof
 
 *124
 
 of *the will, with the entries made by him, stating that he decided that the appellant was not, in his opinion, a subscribing witness to the execution of the will, with his certificate of proof, in which it was stated, that the will was proved by the oaths of Chambers and Walker, were read. The statute makes it the duty of the surrogate to record the will, and the proofs and examinations taken by him upon it, and to sign and certify the record, and then provides, that the record of the will so made, shall be as effectual, in all cases, as the original would be, if produced, and subject to be repelled by contrary proof. (2 R. S. 58, §§ 14 and 15.) The record of the will alone, without the proofs and examinations taken by the surrogate, would not be admissible. The proofs and examinations are indispensable to give validity to the record of the will.
 
 (Morris
 
 v. Keys, 1 Hill 540.) In admitting this evidence, so far at least as the proofs and examinations are involved, the surrogate committed no error, and the objection being general, it cannot avail the respondents, if a portion of the evidence under the general offer was erroneously admitted. The opinion of the surrogate, upon the point whether the appellant was an attesting witness, is quite immaterial, as is also the statement in his certificate of the names of the witnesses, upon whose oaths the execution of the will was proved. The proofs and examinations are not only admissible, but important.
 

 The proofs show that Chambers and Walker were the only witnesses whose testimony tended in the slightest degree to prove the due execution of the will; that their evidence was sufficient and satisfactory to the surrogate, that all the requirements were complied with in the execution of the will, is clear, or no certificate of the due proof of the will could have been made by him. This being the case, the appellant should not have been sworn as an attesting witness, for the reason that a case had
 
 *125
 
 arisen in which the statute would permit the will of the testatrix to prevail, and save to the appellant the legacy-bequeathed to him.
 

 If, *however, he was not sworn as an attesting witness to the execution of the will, then all doubts as to the question are put at rest. This examination shows that he was not. Chambers and Walker were &worn as witnesses to prove the will; the appellant was sworn “to testify as to the questions which should be put to bim by the surrogate, touching the circumstances of the executing the said will, and how his name came to be attached to said will as a witness.” The surrogate had probably been apprised that the appellant drew the will, and received it from the testatrix, and, therefore, thought proper to examine him, as authorized by § 17 of the act of 1837, to which the oath administered conforms, except that portion of it taken by the appellant to testify as to the questions which should be put to him, “as to how his name came to be attached to the will as a witness.” This oath limited the appellant to the answer to such questions as the surrogate should propound, and did not require nor strictly permit him to testify, except in response to the interrogatories of the surrogate. The oath was not calculated to elicit the material facts ordinarily known by a subscribing witness; and is in no respect such an oath as should be administered to an attesting witness, and was not understood, either by the appellant or the surrogate, to have been administered for the purpose of improving him as such. The oath was not to the appellant to give evidence in the matter depending ; he was not, therefore, called upon to tell the whole truth, which, when told, would be properly classified under the denomination of proofs, but he was restricted to the questions put by the surrogate, which were reduced to writing and subscribed. This was an
 
 examination,
 
 a9 contradistinguished from
 
 proofs,
 
 elicited from a witness sworn to speak the whole truth.
 

 
 *126
 
 The statute that avoids legacies to witnesses, relates exclusively to attesting witnesses, without whose testimony the due execution of the will
 
 cannot
 
 be proved. This will has been proved without contest and without the testimony of the appellant; the time for appeal has Passe<^ arLC^ n0 controversy *can arise before the surrogate in relation to the proof of it, and none elsewhere, where the statute controls the number of witnesses necessary to be examined. If the title to real estate devised should be contested, one only of the subscribing witnesses, who can prove the execution of the will, need be examined.
 
 (Jackson
 
 v.
 
 Luquere, 5
 
 Cowen 221;
 
 Dan
 
 v.
 
 Brown,
 
 4 Id. 483.)
 

 The remaining question is upon the respondent’s objection, that the condition upon which the legacy was to be paid to the appellant was
 
 “
 
 unreasonable, repugnant and contrary to public policy.” Unreasonable conditions imposed upon an estate devised, calculated improperly to restrain the 'action of the devisee, or abridge ,the rights inseparably incident to absolute ownership, are regarded as repugnant and invalid. In the case before us, no estate had become vested in the church; no rights over the legacy could be exercised by it, and hence none were abridged by the condition. The bequest was to the church,
 
 provided
 
 the appellant should continue pastor over its people, for seven years to come, but if not, then the sum bequeathed was to be paid to him. The church was not entitled to the bequest, until the expiration of seven years, and not then, unless the appellant had continued his pastoral charge during that period. This construction is quite apparent, from the bequest to the church alone, and is strengthened by the terms of the bequest over to the appellant. The direction to pay is not given to the church, but to the executors, whose duty it was to have retained the legacy until the seven years had expired, or until thp pastoral relations between the appellant
 
 *127
 
 and the church were dissolved. The condition, therefore, was not to affect a vested interest, hut a condition precedent to the legacy’s vesting. A vested estate, real or personal, ought not to be trammelled with conditions that should prevent its enjoyment or alienation; but when the estate has not vested, and can only vest upon condition, it is difficult to see, upon what just principle, the devisee or legatee can ask to have the condition which the owner has seen fit to *impose, rejected, that he may enjoy the gift. The election is given to perform the condition, or not take the estate; and he should be satisfied, if the condition is such that he cannot or choose not to perform it, to let the estate alone.
 
 [1]
 

 Such is the rule in-relation to a devise of real estate, or a legacy charged upon lands. In the case of
 
 Newkerk
 
 v.
 
 Newkerk
 
 (2 Caines 345), cited by the respondents, Livingston, J., in delivering the prevailing opinion of the court, in a case of a devise of real estate, after deciding that the condition then under consideration was a condition subsequent, remarked, that it was not “very important to fix on the class to which the condition belonged.” THOMPSON, J., dissenting, thought otherwise, and held the condition to be good, because he regarded it a condition precedent. The remark alluded to, can be regarded in no other light than as a
 
 diaum
 
 of the learned judge, and, therefore, detracts but little from the rule, as previously well settled, that conditions precedent in relation to real estate must be strictly complied with, or the estate does not vest.
 
 (Stackpole
 
 v. Beaumont, 3 Vesey 98, note 4, Sumner’s edition; 1 Story’s Eq. Jur. p. 286, § 289, and note 1.) Whether a bequest of per
 
 *128
 
 sonal estate, or a legacy not charged upon lands, upon a condition precedent, is subject to the same rule, is not well settled. (1 Story’s Eq. Jur. p. 286, § 289, and note 1.) It is difficult to see why such conditions should differently affect real and personal property. Whether they should or not, is not now necessaiy to be determined, inasmuch as it is well settled, that if there be a failure of the condition upon which personal estate is bequeathed, and a bequest over, as in this case, no estate vests, and the bequest over becomes operative.
 
 (Scott
 
 v.
 
 Tyler,
 
 2 Bro. Ch. 431;
 
 Stackpole
 
 v.
 
 Beaumont,
 
 3 Vesey 98, note 4;
 
 Knight
 
 v.
 
 Cameron,
 
 14 Id. 389; 1 Story’s Eq. Jur. § 297.)
 

 The appellant, therefore, upon the dissolution of the pastoral relations between him and . the Associate Reformed Church of Broadalbin, before the expiration of the seven years fixed by the will, became entitled to the bequeathed over l1™) *with the interest thereon, as decreed by the surrogate; whose decree must be affirmed, and the judgment of the supreme court reversed.
 

 Judgment of the supreme court reversed, and the decree of the surrogate affirmed.
 

 [1]
 

 2 A legacy upon condition precedent does not vest, nntil performance. Burns
 
 v.
 
 Clark, 37 Barb. 96; Campbell
 
 v.
 
 McDonald, 10 Watts 179. And tliis, although there be no bequest over. Gilliland
 
 v.
 
 Bredin, 63 Penn. St. 373. It sinks into the residue. Domestic and Foreign Missionary Society’s Appeal, 30 Ibid. 425; Stoyer’s Appeal, 77 Ibid. 282.