(116 App. Div. 763)

CUSHMAN v. CUSHMAN et al.

(Supreme Court, Appellate Division, Second Department. January 18, 1907.)

1. WILLS—CONTINGENT ESTATES—PERFORMANCE OF CONDITION—POWER OF JUDGMENT.

A testator gave the residuary estate to his executors in trust, to pay the income to his three sons. At a fixed period, if any of the sons in the judgment of the executors showed certain qualities, it empowered the executors to pay over the corpus to him; otherwise it continued the trust. If, however, at any time subsequent thereto, any son who had not been qualified at the fixed period should in the judgment of the executors reveal those qualities, it then empowered the executors to pay over the corpus; otherwise it continued the trust. *Held*, that the exercise of judgment as to the fulfillment of the condition was lodged solely in the executors, and, if they refused or neglected to exercise it, the gift could not be enforced, unless the refusal proceeded from a vicious, corrupt, or unreasonable cause.

2. SAME—ACTIONS BY LEGATEE—EVIDENCE—SUFFICIENCY.

In an action to recover the corpus of an estate, and for an accounting evidence examined, and *held* to sustain the decision of the referee that the cestui que trust had not revealed his capacity to prudently use, manage, and dispose of the property, if turned over to him.

3. PERPETUITIES—SUSPENSION OF POWER OF ALIENATION—WILLS—CONSTRUCTION.

Under a will the residuary estate was given in trust to the executors, to pay the income to the testator's three sons "until my youngest child now living shall have attained the age of 25 years, or until such time as such youngest child would, if living, have attained the age of 25 years," and upon the happening of that event the executors were directed to pay over the corpus of the estate to the sons. The will further provided that, in case of the death of any of said three children, leaving no lawful issue surviving, before receiving actual possession of his share of the estate, then and in such case the share of such child or children so dying should go to the testator's brother, but, otherwise, to the lawful issue of such of the testator's children as might die leaving lawful issue, him or them surviving. *Held*, not to create a trust which suspends alienation for a longer period than two lives in being.

4. TRUSTS—VALIDITY—CONTEST—WILLS—CONSTRUCTION—PERSONS INTERESTED.

Where a person interested in an estate left to him in trust by a will acquiesces in the validity of the trust, and there has been a long-continued course of contemporaneous construction, wherein the court disposed of matters upon the theory that the trust existed, an action brought by him to repudiate the validity of the trust is not one that appeals to a court of equity.

[Ed. Note—For cases in point, see Cent. Dig. vol. 47, Trusts, §§ 73, 75.]

5. WILLS—CONTINGENT ESTATES—ENJOYMENT OF INCOME BEFORE DISTRIBUTION.

Real Property Law, Laws 1896, p. 564, c. 547, § 30, provides that future estates are either vested or contingent. Section 47 (page 567) provides that an expectant estate may be defeated in any way which the party creating such estate in the creation thereof has authorized, but that such estate shall not on that ground be adjudged void in its creation. A testator gave the residuary estate in trust to pay the income to his sons until the youngest should be 25 years of age, when his share should be distributed to him, if he fulfilled certain conditions, and, if not, then the trust should be continued until he did fulfill the conditions. If he died before receiving possession of his share of the estate, leaving issue him surviving, then his share should go to them, but otherwise it should go to the testator's brother. The son never fulfilled the conditions, and died without issue. *Held*, that the estate created was a future contingent estate, and hence never vested in the son.

6. SAME—LIMITATION OVER—VESTED REMAINDER.

Where a testator gave the residuary estate in trust for his three sons, to be paid to them upon the fulfillment of certain conditions only, and in case any of them died before receiving possession, leaving issue them surviving, then to their children; but, if they died without the conditions being fulfilled, or leaving no children, then the estate to go to the testator's brother, the gift over to the brother was a contingent estate in remainder, vesting in the brother at the testator's death.

7. EXECUTORS—APPOINTMENT—CODICIL.

Where a will named two individuals as executors, and the codicil substituted two different individuals, and the testator cast no duty upon the individuals first named, other than perforce of their nomination to the executorships, and did not withhold from the second nominees any of the powers conferred upon the first nominees, the second nominees have the same rights and powers as though they had been originally named in the body of the will.

8. TRUSTS—TRUSTEES—DUTIES ANNEXED TO OFFICE OF EXECUTOR—RESIGNATION.

When a trust is annexed to the office of executor, then the resignation of the latter office carries the relinquishment of the former place.

9. EXECUTORS—SEVERAL EXECUTORS—ONE ACTING—POWER.

Where a power has been given to several executors, but only one of them acts as such, the others having resigned, he can alone exercise the power.

Appeal from Special Term, Kings County.

Action for an accounting by Mary F. Cushman, as executrix of the last will and testament of Thomas H. Cushman, deceased, against Harry C. Cushman, individually, and as executor of the last will and testament of Paul Cushman, and as administrator de bonis non of the goods of Robert S. Cushman, deceased, and others. From a judgment dismissing her complaint, plaintiff appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

Frederick Seymour (Maurice Leon, on the brief), for appellant.
Henry W. Simpson, for respondents.

JENKS, J. The defendants demurred to the complaint with success at first, but this court reversed the interlocutory judgment. They pleaded anew and have succeeded upon the trial before the referee. The opinion of the court upon the first appeal (92 N. Y. Supp. 833) written by Willard Bartlett, J., states the preliminary facts and defines the issues. The opinion of the learned referee upon the trial also lightens my labor.

The scheme of the testator dealt with his three sons alike. Generally speaking, it gave the residuary estate to his executors in trust to pay the income to the sons. At a fixed period, if any of the sons in the judgment of the executors showed certain qualities, it empowered the executors to pay over the corpus to him; otherwise it continued the trust. If, however, at any time subsequent thereto, any son who had not been qualified at the fixed period should in the judgment of the executors reveal those qualities, it then empowered the executors to pay over the corpus; otherwise it continued the trust. The plaintiff does not contend that the son Thomas (with whom alone we are dealing) was qualified to receive the corpus at the fixed period, but that about 10 years thereafter, while the executor was alive, and ever after, Thomas became qualified, not only in fact, but also in the judgment of the executor, within the purview of the scheme to receive the corpus. The suit in brief is to recover the corpus and for an accounting as to it.

There is no proof whatever against the finding that this son never so reformed his habits and so conducted himself as rendered him in the judgment of the executor of the said will, Paul Cushman, competent to manage and properly use and dispose of the share of his estate. Inasmuch as the testator had constituted the executors the judges of such competency, it was not enough for the plaintiff to establish to the satisfaction of the court that this son had so reformed and had so conducted himself as to be competent. If this sufficed, then, in effect, contrary to the express requirement of the testator, the court, and not the executors, is the judge of such competency. Hill on Trustees, marginal pages 485, 502, says:

"If the trustees refuse or neglect to exercise it [the power], the gift cannot be enforced. And in such cases the court cannot decide upon the propriety or impropriety of the refusal by the trustees to give their assent, unless the refusal be shown to proceed from a vicious, corrupt, or unreasonable cause. And it will rest with the other party to prove the existence of an improper motive, and not with the trustees to show a reason for their refusal."

This decision, if made in good faith in the fair exercise of discretion, should not be disturbed by the court. See Perry on Trusts, §§ 507–519, especially section 508; Hawley v. James, 5 Paige, 468; Colvin v. Young, 81 Hun, 116, 30 N. Y. Supp. 689.

I think that the rule obtains to the extent expressed in the first sentence quoted from Hill, supra, "If the trustees refuse or neglect." And hence it matters not that there is no express proof of any application by this son to the executor. There was no fixed period, after the

expiring of the first period, when the executor should determine as to the son's habits and competency, and hence the executor was not called upon at any definite time to decide that question. If the son thought at any time that he met the conditions, it was his duty to call for the exercise of the power by the executor. His neglect to do so for 10 years after it is asserted that he was entitled to the exercise of the power should not now make for him or his representatives so as to secure the judgment of the court in place of the judge constituted by the testator. Without consideration of all absence of proof that the executor at any time was requested to make over the fund, if I am right in my view, the plaintiff cannot virtually depose the judge chosen by the testator, set up the court in his place, and contend that, if the court is satisfied that the son had reformed and had become competent, it is enough to remove the condition. It seems to me that the plaintiff must show that the failure of the executor to act is attributable to selfish, corrupt, or improper motives, and could not be attributable to a fair exercise of discretion upon the facts. However this may be, I am convinced that, even if the court were the tribunal of the first instance to determine this question, there is no evidence which would justify a finding for the plaintiff. The expressions of the testator with reference to the first period are:

"Provided, however, that such sons are then, or shall at that time be, of good moral habits and shall be in the judgment of my said executors competent to take charge of and prudently use, manage and dispose of such shares, * * * but in case * * * shall * * * be of so immoral, prodigal or improvident habits and character as shall render him * * * incompetent to properly and prudently use and manage * * * in the judgment and opinion of my said executors."

As to the second period, they are:

"In case either of my said sons, who shall or may be incompetent at the period above mentioned in the judgment of my executors to receive and properly manage his share or portion of my estate, shall at any time afterwards so reform his habits and so conduct himself as to render him in the judgment of my said executors competent to manage and prudently use and dispose of his said share or portion of my estate, that then and in such case" the executor may pay over.

And then finally:

"It is hereby expressly declared to be my desire, wish and intention to vest my said executors and their survivor with the discretion of judging in regard to the capacity, moral character and habits of my said sons in respect to their competency respectively to properly and prudently manage and dispose of their respective shares in my residuary estate, and to withhold the said principal of said shares from either or any or to convey and transfer the same to either or any of my said sons, as the exercise of their sound discretion and honest judgment in the premises shall deem fit and proper and in accordance with my will herein expressed in regard to my sons, but neither of my said executors shall in any manner be held liable for any error of judgment in the premises."

The scheme of the testator is not one of punishment for immorality and reward for reform by withholding or bestowing the corpus of the fund. His main intention is to make secure provision out of his estate for his sons. To that end he fastens a trust upon the fund which may cease if provisions may be made reasonably secure without it. The conditions of cessation of the trust are moral character and com-

petency to· prudently use, manage, and dispose of the fund itself.
Moral character alone does not satisfy the conditions, for the testator
is not satisfied that this alone will preserve the estate; but there must
be business capacity. Moral character might assure that the money
would not be dissipated in immoral ways, but it would afford no as-
surance—the examples to the contrary are countless—that, however
ascetic and unspotted from the world the son might be, he had the
capacity properly and prudently to manage and to dispose of the cor-
pus. The testator does not regard alone how the money may be ex-
pended, of which morality may assure propriety, but whether it may
be managed and prudently used and disposed of. If there be no as-
surance of this, then the property is to be preserved by the trust fas-
tened upon it.

The case as presented may be thus summarized. At the first fixed
period this son was not qualified in any way to receive the corpus.
Some time in 1888 he became temperate, and thereafter was a total ab-
stainer. His habits of private life were good. He did not gamble,
he did not make reckless expenditures, and he was a careful buyer of
cigars for his business as an innkeeper. On the other hand, he had
been in the receipt of the income of $50,000 for a period beginning be-
fore his majority, until he was 44 years old, and he was not required
by his station in life, or by claimants upon his bounty, to make any ex-
penditures. He had little to show for the income of those many years.
He had ventured in the coal business and had lost from $14,000 to
$40,000, and had spent his money foolishly, as he admitted. When
he was set up in business as a hotel keeper, he had failed to make the
business profitable. These were all of his business undertakings. He
had at different times expressed the wish to venture in the ice busi-
ness, in a brewery, in farming; but nothing came of them. He seems
to have drifted along without exertion or energy, enterprise or busi-
ness achievement, dependent· upon his income, which, in the latter
years of his life, he often outran. With this history before us, can
it be said that a fair-minded executor, or, disregarding the judge
selected by the testator, that any person in the exercise of said judg-
ment could conclude that the fund should be freed from the trust be-
cause the cestui que trust had revealed his capacity to prudently use,
manage, and dispose of a fund of $50,000? Upon the facts I can see
no ground for disturbing the decision of the learned referee. Lowery
v. Erskine, 113 N. Y. 52, 20 N. E. 588.

The point is made first in this court that the trust made by the eighth
clause of the will is invalid, for the reason that it suspends the power
of alienation for more than two lives in being. The argument is that,
as the trust cannot terminate until the "youngest child now living shall
attain the age of 25 years; or until such time as such youngest child
would if living have attained to the age of 25 years," the trust is not
for the life of this son, but is to continue until a definite period, name-
ly, that when the youngest son would if living be 25 years old. Al-
though the estate was consolidated into one trust, it was for the pur-
pose of dividing and paying over the income to the three sons equally,
to each· one-third. Moreover, the testator expressly provides that,
if the share had not been theretofore paid over, "in case of the death of

such child or of either of such children or of either of my said three children leaving no lawful issue surviving before receiving actual possession of his share or portion aforesaid of my estate, then, and in such case, I give and bequeath the share or portion of such child or children so dying to my brother Paul and to his heirs forever, but otherwise then to the lawful issue of such of my children as may die leaving such lawful issue him or them surviving." It seems to me, then, that the interests are "separable and distinct, and that the will is to be so construed as though in terms it had created a separate trust for each child and the issue of each child," if any, within the principle laid down in Wells v. Wells, 88 N. Y. 323, and the authorities therein cited. The utmost period of the suspension of the ownership, so far as Thomas is concerned, is his life. The period fixed by the testator as that when the youngest child would be, or would have been if living, 25 years old, is the fixed period when the executors might as to any child then qualified terminate the trust by bestowal of the corpus. It is not the period during which the trust must exist, inasmuch as the plain subsequent direction of the testator is that as to each child's share it shall upon his death go to his issue, or, that failing, to the testator's brother or his heirs.. The trust then ended at the death of Thomas. Montignani v. Blade, 145 N. Y. 111, 39 N. E. 719.

It is probably a sufficient answer to the suggestion of the respondent, that the various proceedings before the surrogate were not an estoppel so far as the question of the validity of the trust is concerned, that all of the parties interested were not before the court (Riggs v. Cragg, 89 N. Y. 480), inasmuch as one of the sons was dead, and it does not appear that his representatives were made parties. But for this I should be strongly inclined to the view that, perforce of the petition and proceedings indicated by the defendant's Exhibit B, there existed an estoppel. Thorn v. De Breteuil, 179 N. Y. 64, 71 N. E. 470. But I may consider that the present action is in repudiation of the long-continued course of contemporaneous construction, and that its equities do not appeal to the vigilance of a court of equity. The testator died in 1871. This son became 25 years old in 1879. Yet no distribution was made, nor, so far as it appears, was there a murmur against it. In 1885 the two survivors united in an accounting proceeding against the executor, which resulted in a decree that one-third of the corpus should be paid to the children of the deceased son, and that the trustee should retain the shares of the petitioners. Upon the death of the other son there was another accounting, and various successive accountings in 1889, 1891, and 1894, wherein the court disposed of the matters upon the theory that the trust existed, and throughout this son acquiesced. See Thorn v. De Breteuil, 179 N. Y. 81, 71 N. E. 470; Follmer's Appeal, 37 Pa. 121; Hagerty v. Albright, 52 Pa. 274; Wright v. Oldham, 8 Leigh (Va.) 306.

I am of opinion that the one-third of the estate never vested in this son. The scheme of the testator was not to defer the time of possession, but to withhold possession until the son was 25 years old, when, if he had reformed, and was competent, and only in that event, he was to receive the corpus, and likewise is the provision for a subsequent

gift thereof. It was an estate in expectancy, a future estate, and it was contingent, because it was uncertain whether the son would at the time fixed for possible enjoyment, or at any period thereafter, be so reformed and so competent as to entitle him to the estate under the discretionary power of decision conferred on the executors. 4 Kent's Coms. star page 306. It is contingent in that the event in which it is limited remains uncertain. Section 30, Real Property Law, Laws 1896, p. 564, c. 547, founded on section 13, 1 Rev. St. [1st Ed.] p. 723, pt. 2, c. 1, tit. 2. Because this son is he who shall take if the condition be met, it does not follow that the person is certain. It is not Thomas who can take, but Thomas reformed and competent. And it was permissible for the expectant estate to be thus hedged in. Section 47, Real Property Law, Laws 1896, p. 567, c. 547, founded on sections 32 and 33, 1 Rev. St. [1st Ed.] p. 725, pt. 2, c. 1, tit. 2. As to the feature of contingency, see Hawley v. James, 5 Paige, 485 (which point was not affected by the reversal in 16 Wend. 61); Caw v. Robertson, 5 N. Y. 125; Smith v. Rockefeller, 3 Hun (N. Y.) 295; Reeves on Real Prop. § 577 et seq. I agree with the learned referee that the gift over to Paul, in event that Thomas should not become entitled to the corpus, was a contingent estate in remainder, vesting in Paul at the testator's death. Roosa v. Harrington, 171 N. Y. 341, 64 N. E. 1.

I am of opinion that the power of judgment as to the fulfillment of the condition was lodged in Paul Cushman as executor. Hill on Trustees, star page 489. The will and codicil are to be construed as but one instrument. The will named two individuals as executors, and the codicil substituted two different individuals. But there is nothing to indicate that the testator cast any duty upon the individuals first named other than perforce of their nomination to the executorships, and there is nothing to indicate that he intended to withhold from the second nominees any of the powers conferred upon the first nominees. And I agree with the learned referee that Paul Cushman alone can exercise the power. Crawford v. Forshaw, L. R. Ch. 1891, p. 261; Leggett v. Hunter, 19 N. Y. at 456. If the trust is annexed to the office of executor, then the resignation of the latter office carries the relinquishment of the former place. 11 Am. & Eng. Ency. of Law (2d Ed.) 527. The consent of the acting executor was only necessary. 30 Am. & Eng. Ency. of Law (2d Ed.) p. 805. See, too, 1 Williams on Executors (7th Am. Ed.) p. 335, c. 6, § 1; Schouler on Ex., § 49.

The judgment is affirmed, with costs. All concur.