In the Matter of the Accounting of EDWARD TOWNSEND et al., as Executors of EDWARD H. PERKINS, JR., Deceased, Respondents.

MARGARET N. PEARCE et al., Appellants; ETHEL H. PERKINS et al., as Executors of NORTON PERKINS, Deceased, et al., Respondents.

**Will — trust — suspension of power of alienation — possibilities as well as facts must be considered in determining question — trust provision suspending absolute ownership for three lives — not cured by provision authorizing trustees to convey principal to cestui que trustent if, considering habits, capacity and ability, they considered such transfer best.**

1. In testing the question whether power to alienate is absolute and whether ownership is absolute, possibilities as well as facts existing at the time of testator's death must be considered. A power is not absolute if reasonable possibilities may prevent its exercise.

2. Where a testator, by his will, erected a trust for the benefit of his widow and directed that upon her death half of her share should be held in trust for a son and half for a daughter during their lives and, upon the death of either without issue, his or her share should be held in trust for the survivor during his or her life, there was a clear suspension of the absolute power of alienation and of absolute ownership for more than two lives. And this was not remedied by a further provision that the executors might, on arrival of the son or daughter at twenty-one years of age, pay to them any part or all of the principal if they should judge " (the habits, capacity and ability of my son or

daughter to take care of money and property and all his or her circumstances being considered, independently of any wishes of his or hers), that such payment, transfer and conveyance shall be best for my said son or daughter." The power of the executors was not plenary. They were not in every possible contingency authorized to transfer and convey. Conditions were imposed which under possible contingencies no honest trustee could disregard. Accordingly the absolute power of alienation and of absolute ownership remained suspended. (*Cushman* v. *Cushman*, 116 App. Div. 763; affd., 191 N. Y. 505; *Matter of Trevor*, 239 N. Y. 6, distinguished.)

*Matter of Perkins*, 219 App. Div. 807, affirmed.

(Argued June 1, 1927; decided July 20, 1927.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 4, 1927, which unanimously affirmed a decree of the New York County Surrogate's Court judicially settling the accounts of the executors and construing the will of Edward H. Perkins, Jr., deceased.

*Langdon P. Marvin* and *George W. Martin* for appellants. The will does not suspend the absolute power of alienation or the absolute ownership beyond the statutory period. (*Cadell* v. *Palmer*, 1 Cl. & F. 372; *Hawley* v. *James*, 16 Wend. 61; *Robert* v. *Corning*, 89 N. Y. 225; *Matter of Wilcox*, 194 N. Y. 288; *Mifflin's Appeal*, 121 Penn. St. 205; Chaplin, Suspension of Power of Alienation [2d ed.], §§ 43, 47; *Whitefield* v. *Crissman*, 123 App. Div. 233.) During the life of the son the trustees had power to convey to him, thus terminating the trust and the future limitations and uniting in him all legal and equitable interests, so that he would have had and could have conveyed " an absolute fee in possession." There was, therefore, no possible suspension during the son's life, for there were at all times persons in being by whom an absolute fee in possession could be conveyed. (Real Prop. Law, § 42.) (*Spitzer* v. *Spitzer*, 38 App. Div. 436; *Equitable Trust Co.* v. *Pratt*, 117 Misc. Rep. 708; 206 App. Div. 689; *Garvey* v. *McDevitt*, 72 N. Y. 556;

*Carrier* v. *Carrier*, 226 N. Y. 114; *Robert* v. *Corning*, 89 N. Y. 225; *Chanler* v. *N.. Y. Elevated R. R. Co.*, 34 App. Div. 305; *Henderson* v. *Henderson*, 113 N. Y. 1; *Deegan* v. *Wade*, 144 N. Y. 573; *Matter of Kohler*, 193 App. Div. 8; 231 N. Y. 353; *Cushman* v. *Cushman*, 116 App. Div. 763; 191 N. Y. 505.)

*Edward N. Perkins* and *George W. Jaques* for Ethel H. Perkins et al., as executors of Norton Perkins, deceased, respondents. The trusts in question effect an unlawful suspension of the absolute ownership of personal property in respect of one-sixth of the residuary estate. (*Matter of Wilcox*, 194 N. Y. 288: *Farmers' L. & T. Co.* v. *Kip*, 120 App. Div. 347; *Ahnstaedt* v. *Bendick*, 47 App. Div. 265; *Simpson* v. *Trust Co.*, 59 Misc. Rep. 96; *Equitable Trust Co.* v. *Pratt*, 117 Misc. Rep. 708; *Schettler* v. *Smith*, 41 N. Y. 328; *Matter of Wilcox*, 194 N. Y. 288.)

*Myron T. Townsend* for Edward Townsend, as executor of Edward H. Perkins, Jr., deceased, respondent.

*William V. Saxe* for Louis S. Levy et al., as executors of Mary N. Perkins, deceased, respondents.

O'BRIEN, J. By the third clause of his will, Edward H. Perkins, Jr., directed his residuary estate to be divided into three equal parts to be held in trust, one for his wife and one each for his son and his daughter. He directed further that, upon the death of his widow, half of her share should be held in trust for the son during life and half for the daughter during life. Upon the death of either the son or the daughter without issue, his or her share should be held in trust for the survivor during his or her life with remainder to the issue of the survivor. The testator died in 1902, the widow in 1923 and the son, without issue, in 1925. If the will included no other direction respecting the trust, these terms clearly would violate our statutes prohibiting the suspension of

the absolute power of alienation and of absolute ownership during more than two lives. (Real Prop. Law [Cons. Laws, ch. 50], sec. 42; Pers. Prop. Law [Cons. Laws, ch. 41], sec. 11; *Matter of Horner*, 237 N. Y. 489.) By these terms standing alone, the absolute power to alienate one-half of the widow's share amounting to one-sixth of the residuary estate might be suspended for the duration of the lives of the widow, the son and the daughter. The will did, however, include this additional provision; " *Sixth;* it is my will and I direct that, after my said son or my said daughter shall arrive at twenty-one years of age, my said executrix and executors and the survivor of them and their successors and the successor of either of them or a majority of them have power and authority, which is hereby given to them, to pay, transfer and convey to my said son or daughter at one time or at as many times as they shall deem for his or her best interests, any part or parts or all of the principal and fee of the property above directed to be paid and invested for his or her benefit, but no such payment, transfer or conveyance shall be made unless the executrix and executors of this will or a majority of them shall judge (the habits, capacity and ability of my son or daughter to take care of money and property and all his or her circumstances being considered, independently of any wishes of his or hers), that such payment, transfer and conveyance shall be best for my said son or daughter."

Appellants argue with great ability and learning that by the sixth clause the testator conferred power upon the trustees in their discretion to convey to the survivor of the son and the daughter the legal title to the one-sixth of the residuary estate, that such discretionary power is absolute in the sense that it is free from any restraint except an obligation to act honestly and that such an obligation is always implied. They concede that the law of this State requires all future estates to be so

limited that in every possible contingency they will abso-
lutely terminate within the period allowed or they will
be void (*Schettler* v. *Smith*, 41 N. Y. 328, 334; *Herzog*
v. *Title G. & T. Co.*, 177 N. Y. 86, 99; *Matter of Wilcox*,
194 N. Y. 288, 295), but they urge that here is a complete
power always existing throughout at least one of three
lives to terminate the trust and destroy all future limi-
tations, that the absolute power of alienation of real
property and the absolute ownership of personal property
were not suspended for more than two lives, and, therefore,
that the trust as to this one-sixth of the residuary estate
could have been terminated within the prescribed duration.

We cannot fully convince ourselves that the trustees'
power was plenary. To resist the persuasion that some
restriction was placed upon it seems to be impossible.
The limitation might perhaps be slight; it depended upon
the trustees' judgment. Their judgment in turn was
subject to possibilities which might not and never did
in this case develop into facts. Yet they might have
happened. If they had, no power to alienate could
have existed. Events outside the testator's and the
trustees' control conceivably could occur which would
prevent intelligent fiduciaries from honestly transferring
and conveying the corpus of the trust estate. The
validity of the provisions of this will must be deter-
mined not by what has happened but by what might
have happened under them. (*Monypeny* v. *Monypeny*,
202 N. Y. 90, 93.) The testator imposed conditions
which under possible contingencies no honest trustee
could disregard. He must be presumed to have selected
trustees who possessed at least fair intelligence and
in whom he confided. Their judgment respecting the
welfare of the *cestui que trustent* must be governed
by the habits, capacity and ability of the beneficiaries
to care for money and property together with all
their other circumstances as the trustees view them.
The testator had so charged them. If the son or

the daughter possessed or acquired credulous, improvident, reckless or dissipated qualities and if the trustees were aware of such characteristics, or even believed that they existed, who will assert that they honestly could put in control of property persons who were incompetent or whom they considered incompetent? The possibility was always present that they could convey only by acting contrary to their judgment. Fortunately, neither of the testator's children displayed any such disposition nor did the trustees think they did, but these facts are not essential. In testing the question whether power to alienate is absolute and whether ownership is absolute, possibilities as well as facts existing at the time of testator's death must be considered. A power is not absolute if reasonable possibilities may prevent its exercise. This will indicates that the testator suspected, perhaps only remotely, the existence of such possibilities, for, if he had intended to vest his trustees with a discretion perfectly free, he would not have insisted that they be guided and their judgment be confined by the factors which he specified.

In *Robert* v. *Corning* (89 N. Y. 225) executors possessed unqualified power to sell at any time within three years after the death of the testator and were under compulsion to do so. Not only was such authority conferred, the duty to exercise it was enjoined in peremptory language. The only discretion left to them was the right to postpone the sale for three years. We held that even in the absence of any provision in the will, the executors would have had a reasonable discretion as to the time of sale to be exercised in view of all the circumstances. There was an imperative obligation to sell by the end of three years and a discretionary power to sell sooner. These combined elements rendered certain a reasonably early sale. When trustees are prohibited from alienating, even for a short term, the trust is void. We enforced that rule in a case where the power was suspended for four years (*Garvey*

v. *McDevitt*, 72 N. Y. 556). In *Henderson* v. *Henderson*
(113 N. Y. 1) no trust was created. The real estate was
devised to the testator's children who took their interest
at his death. A duty to sell, similar to that in *Robert
v. Corning* (*supra*), was imposed upon the executor. He
was allowed in his discretion to postpone the sale for
five years, but during that time the children, all of full
age, could have united with him in a conveyance. In
*Deegan* v. *Wade* (144 N. Y. 573) a testator who died in
October, 1890, gave an imperative power of sale to his
executor with a direction that it be executed in the
spring of 1891. This instruction, instead of postponing,
facilitated the sale and amounted to nothing more than
a request that it be made at a date earlier than the
expiration of the ordinary period of administration.
*Cushman* v. *Cushman* (116 App. Div. 763; affd., 191
N. Y. 505) does not run counter to the principle now
under consideration. We decided nothing more than
that a trustee under a will, which did not suspend the
power of alienation for more than one life, could not be
compelled to exercise his discretion in such a manner
as to put a beneficiary in possession of the corpus of the
trust estate. No other actual determination was neces-
sarily made by us. The opinion at the Appellate Division
decided that, while there was only one trust fund, three
separate trusts had been created, no one of which con-
tinued for a duration extending beyond one life and that
the interest of each of the three beneficiaries was a future
estate in expectancy, contingent upon an uncertain event.
In order to avoid suspension of the absolute power to
alienate, events must be certain. In every possible con-
tingency, the future estate must terminate not later than
the end of two lives. Cushman's will was saved from
the charge of attempting to suspend the absolute power
of alienation for more than two lives by the fact that
provision was made for the termination of each trust
at the expiration of the life of each beneficiary. If that

will had contemplated the possible suspension of the power for more than two lives, as we think the will before us attempts to do, it would have been void. In both wills the vesting of the beneficiaries' interest is contingent upon uncertain events. In *Matter of Trevor* (239 N. Y. 6) the will was so construed that the interests of certain minors vested absolutely at the end of the second life. The majority also thought that the dominant purpose of the testator was such that it did not offend the statutes against perpetuities and applied the principle that invalid portions of a will can be excised and the sound parts preserved. (*Carrier* v. *Carrier*, 226 N. Y. 114.) These are the precedents cited by appellants in their thoughtful brief but we think that all of them can fairly be distinguished from the facts in the present case.

We hold, therefore, that the sixth clause of Mr. Perkins' will does not create a more extensive power than an authority dependent for its existence upon such a judgment of the trustees as would result from an honest and reasonably intelligent appraisal of the characteristics and circumstances of the testator's son and daughter. As we read his purpose, he intended that, if their qualities would not, according to the standard of honest and ordinarily intelligent estimation, justify a conveyance to them, any transfer would be in contravention of the trust. It may be that no judicial power exists to review and overthrow a conveyance by the trustees which might be imprudent. Absence of a remedy for the correction of errors of judgment does not, however, bear upon the testator's intent. We view his primary purpose to be a restriction upon the trustees' power to transfer in the event that his children, judged by ordinary standards, should fail in sobriety, prudence and poise as reasonably intelligent people regard these attributes. That clearly appears to have been his dominant idea respecting one-sixth of his residuary estate and it includes a conditional prohibition.

It is apparent that he seriously considered the possibility that his children might lack the qualities which he deemed essential for the control of property and that the trustees might so judge.   He did not leave their judgment wholly free.   It was circumscribed by his injunction which they were bound to respect and obey.   Therefore, they were not in every possible contingency authorized to transfer and convey, and, accordingly, absolute power of alienation and absolute ownership were suspended for more than two lives.

The judgment should be affirmed with costs, payable out of the estate.

CARDOZO, Ch. J., POUND and KELLOGG, JJ., concur; CRANE and ANDREWS, JJ., dissent; LEHMAN, J., absent.

Judgment affirmed, etc.