32

In the Matter of Alfred J. Loew, as Trustee under an Indenture of Trust Made by Mathilde Eckert, Appellant. Helen Ward, as Executrix of Laurette Madsen, Deceased, Appellant; Augusta M. Hopke, Respondent.

Second Department, April 5, 1965.

*Finkel & Nadler* and *Jerome Weinstein* (*Jerome Weinstein* and *Samuel Nadler* of counsel), for appellants.

*Philip A. Limpert* (*F. John McCarthy* of counsel), for respondent.

HOPKINS, J. Laurette Madsen was an employee of the Eckert Iron Works in 1955, when its owner died. The business was inherited by Mathilde Eckert, the widow of the owner; and she turned the business over to George Eckert, her son. Laurette's duties then and thereafter were generally clerical in character: she took care of all the office work, the preparation and computation of estimates, the checking of credit, the making of tax returns and the collection of accounts. In the words of George, Laurette "knew that office inside and out."

At the time of the death of George's father, Laurette had worked in the business for 23 years. No doubt she was considered a valuable employee, since in July, 1955 Mathilde created an *inter vivos* trust for Laurette's benefit. Put tersely, the trust instrument provided that: (1) the income received on the principal of $10,000 was to be paid to Laurette so long as she remained an employee of the iron works; (2) the principal was to be delivered to her if she survived Mathilde's death for one year and if at that time she was still an employee; and (3) the principal was to be delivered to her if her employment ceased for any reason except her death or her own voluntary withdrawal. Moreover, the trust instrument provided that "in the event that the said Laurette Madsen shall at any time hereafter and while she is in the employ of Settlor's son's said business, become permanently and totally disabled, and said total and permanent disability shall have continued for a period of not less than three months, and the Trustee shall be reasonably satisfied that such disability is of a permanent and total nature (in relation to her further services in the said business of Settlor's son), it is directed that the said trust property, together with any income accrued or credited therein, be transferred to the said Laurette Madsen, to be hers absolutely."

Laurette continued in the employ of the iron works until 1962. In May of that year, she fell ill. Her physician testified that she was extremely weak and losing weight, having the

appearance of "chronic malnutrition." He first diagnosed her illness as an upper intestinal malignancy; and in June, 1962, while she was hospitalized, tests confirmed the presence of carcinoma of the esophagus. After her confinement to the hospital, though Laurette returned home in July, she never resumed her work at the office.

While she remained home ill, still losing weight,[1] George Eckert brought the books of the business to her home, and she made entries therein, the extent of which can be gauged by the testimony of George's daughter-in-law that about six hours would have been required to complete the work, all of which was done by Laurette over a period of about three months.

In September, following visits to Laurette's home, Alfred J. Loew, the trustee of the Mathilde Eckert trust, on the basis of his observation of Laurette's condition and a written opinion from her physician, determined that Laurette had an inoperable carcinoma, that she was presently disabled, and that she was entitled to receive the principal of the trust. He notified her of his decision; and sometime after September 16 (three months after her initial hospitalization), he attempted to make payment of the principal to her, but found that she was again confined to the hospital. She died there on October 6, 1962.

In the meantime (on August 17, 1962), Mathilde Eckert had died. Thereafter, the trustee instituted this proceeding, in which he applied for a judicial accounting and a direction that the trust fund be paid to Laurette's estate. Helen Ward, the executrix of Laurette's estate, by her answer, joined in the prayer for relief. The respondent Augusta M. Hopke, individually as one of Mathilde's children and as an executrix of her estate, interposed an answer, claiming the trust fund on behalf of Mathilde's children, on the ground that the trust instrument provided for the payment of the principal to the children in the event that Laurette died prior to the time she was entitled to the receipt of the principal.

The court below held that Laurette was not totally and permanently disabled for three months prior to her death, and that, consequently, the trust principal must be paid to Mathilde's children. We are unable to agree with that conclusion.

The trust instrument should not be construed *in vacuo,* but rather within the frame of the surrounding circumstances (*Matter of Upjohn,* 304 N. Y. 366, 375; *Matter of Day,* 10 A D

---

1. Her physician testified that after her discharge from the hospital, Laurette weighed about 75 pounds; her normal weight was between 100 to 105 pounds.

2d 220, 222) and consistently with the intent of the settlor (*Matter of Fields*, 302 N. Y. 262, 272; *Matter of Matthews*, 280 App. Div. 23, affd. 305 N. Y. 605). Here the purpose of the settlor in establishing the trust for the benefit of Laurette is clear: to retain the services of a faithful and efficient employee in a business then in a process of transition from one ownership to another. The terms of the trust were so drawn as to accomplish that purpose by holding out to the employee the promise of a reward beyond her compensation if she continued in the employ of the business for a period of a year after the settlor's death, or if her employment was terminated for reasons other than her voluntary withdrawal or death, or if she were totally and permanently disabled for a period of three months while employed, and if that disability, in the reasonable view of the trustee, would continue in the future.

Thus, though the trust may have had a donative and benevolent purpose, it had also the purpose of economic benefit to the settlor and her son.[2] Its terms must therefore receive an interpretation consonant with this mixture of benevolence and reciprocal advantage.

The first question which arises is the content of the power of discretion placed in the trustee to terminate the trust and to pay over the principal to the beneficiary. The rule has been evolved in the case of spendthrift trusts that the trustee must exercise his discretion in accordance with the standard which the trust imposes; and, in addition, that the trustee must reach a judgment soundly formed and in good faith upon the basis of the circumstances presented to him (*Matter of Perkins*, 245 N. Y. 478, 485; *Matter of Wilkin*, 183 N. Y. 104, 113; 2 Scott, Trusts [2d ed.], § 187.2, p. 1386). Once the test of discretion imposed by the settlor has been met, and the trustee has acted reasonably and in good faith, the court will not interfere with the exercise of his judgment (*Cushman* v. *Cushman*, 116 App. Div. 763, 766, affd. 191 N. Y. 505; *Germann* v. *Reynolds*, 131 Misc. 559, affd. 224 App. Div. 734, app. dsmd. 249 N. Y. 601; 3 Scott, Trusts [2d ed.], § 334.1, p. 2437).

A settlor of a spendthrift trust sometimes confides in the trustee a discretion to terminate the trust when the beneficiary, in the opinion of the trustee, has attained a certain age and capacity to conserve and enjoy the trust principal (see Halbach, "Problems of Discretion in Discretionary Trusts", 61 Col. L.

---

2. In this light the trust provisions are akin to a bonus arrangement, which may be enforced as a contractual relation (Ann. 28 A. L. R. 331, 332); such provisions are also akin to the more recent device of a pension plan for employees of a business (Ann. 42 ALR 2d 461).

Rev. 1425; Ann. 32 A. L. R. 441; 143 A. L. R. 467; 2 ALR 2d 1383). The appraisal of these elusive qualities may be difficult to make, but the rule insulating the trustee from interference with his judgment by a contrary result by the courts seems well calculated to carry out the intent of the settlor that the trustee chosen to make the decision should do so. We think that the same rule should be applied to the trustee's decision under the present trust.

The trust instrument here required the trustee to be "reasonably satisfied" that Laurette had become permanently and totally disabled for a period of three months and that, *in relation to her further services to the business,* the disability was permanent and total. The evidence with which the trustee was presented was clear that Laurette was suffering with inoperable cancer, that she had not attended her place of work for three months, and that her future was at least clouded. In these circumstances, his judgment that she was totally and permanently disabled was not unreasonable; and he might well view the fact that she had continued to work on the books of the business at home as inconsequential in light of the prognosis for the future. The work which she accomplished was hardly substantial — some six hours spent over nearly three months' time; the trustee could consider that the disability defined in the trust instrument was of the same general nature as the total and permanent disability which is the subject of construction in insurance contracts; and he could find that Laurette's disability was occupational — in relation to her employment — and was reflected by her incapacity to perform in the usual manner the substantial and material acts of her employment (cf. *Baldwin* v. *Fraternal Acc. Assn.,* 21 Misc. 124, affd. 29 App. Div. 627, affd. 159 N. Y. 561; *Katsch* v. *Metropolitan Life Ins. Co.,* 152 Misc. 308; *Harasymczuk* v. *Massachusetts Acc. Co.,* 127 Misc. 344; Ann. 149 A. L. R. 7, 29; 153 A. L. R. 430).[3] Particularly apt is this construction where it appears that the trust, somewhat like the relationship between insured and insurer, was born of a desire to benefit both the beneficiary and the settlor. To deprive the beneficiary of the fruits of her loyalty and constancy because of her final exertions in doing small tasks at home during the period of her illness is to debase these virtues in favor of a narrow interpretation of language.

---

3. Under disability insurance policies, the fact that the employer pays the insured's salary during the disability (*Medlinsky* v. *Metropolitan Life Ins. Co.,* 146 Misc. 855, 859) or that the insured performs light tasks in the office (*Maer* v. *National Cas. Co.,* 266 App. Div. 3; *Brendon* v. *Traders & Travelers' Acc. Co.,* 84 App. Div. 530, 533) does not preclude recovery.

Nor does the fact that the beneficiary's death intervened before the principal could be paid to her cancel the judgment already formed by the trustee and communicated to the beneficiary before her death.

Hence, we conclude that the trustee's determination was made in the exercise of reasonable judgment, in good faith and within the discretion conferred upon him by the settlor.

The judgment, insofar as appealed from, should be reversed on the law and the facts, with costs payable to the trust estate by the respondent Augusta M. Hopke, individually, and the matter remitted to the Supreme Court, Nassau County, for the entry of a judgment not inconsistent herewith. Findings of fact contained in the opinion-decision of the court below which may be inconsistent herewith should be reversed, and new findings made as indicated herein.

BELDOCK, P. J., UGHETTA, BRENNAN and HILL, JJ., concur.

Judgment, insofar as appealed from, reversed on the law and the facts, with costs payable to the trust estate by the respondent Augusta M. Hopke, individually, and the matter remitted to the Supreme Court, Nassau County, for the entry of a judgment not inconsistent herewith. Findings of fact contained in the opinion-decision of the court below which may be inconsistent herewith are reversed, and new findings made as indicated herein.