---

(83 Misc. Rep. 283)

## In re HERMANN'S WILL.

### (Surrogate's Court, New York County. December, 1913.)

1. COMMON LAW (§ 14*)—APPLICATION—TESTAMENTARY PROVISIONS.

The testamentary common law, both prior and subsequent to 1837, supplements the Revised Statutes and is applicable to probate proceedings in Surrogates' Courts.

[Ed. Note.—For other cases, see Common Law, Cent. Dig. § 3; Dec. Dig. § 14.*]

2. WILLS (§ 303*)—PROBATE—EVIDENCE REQUIRED.

Where there is no contest of a will offered for probate, it is only necessary that the two attesting witnesses be examined.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 711–723; Dec. Dig. § 303.*]

3. WILLS (§ 222*)—PROBATE—CONTEST—SURROGATE'S WITNESSES—EXAMINATION—PROCEDURE—CAVEAT.

Laws 1837, c. 460, § 11, providing that in case the proof of any will is contested, and any person having a right to contest the same shall before probate file with the surrogate a request in writing that all the witnesses to such will shall be examined, then all the witnesses to the will who are living in the state shall be produced and examined, provided a statutory procedure in lieu of the old practice of caveat which had become obsolete.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 542–544; Dec. Dig. § 222.*]

4. WILLS (§ 320*)—CONTEST—SURROGATE'S WITNESSES—EXAMINATION.

Under Laws 1837, c. 460, § 11, providing for the examination of surrogate's witnesses in a will contest on the application of a person having

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a right to contest the will, it is error for a surrogate to admit a will to probate without examining the witnesses named in the contestants' notice if the party giving the notice requires it.—

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 758–760; Dec. Dig. § 320.*

5. WILLS (§ 320*)—PROBATE PROCEEDING—CONTEST—"TRIAL."

A contentious probate proceeding is a "trial" which is controlled primarily by the common law in the absence of statute, and hence the right of a contestant to have surrogate's witnesses examined may, be waived by the party giving the notice.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 758–760; Dec. Dig. § 320.*

For other definitions, see Words and Phrases, vol. 8, pp. 7095–7103, 7821.]

6. WILLS (§ 320*)—PROBATE—PROOF—"INQUEST."

The term "inquest," as applied to Surrogates' Courts, is a term of larger signification than as applied to proceedings at common law, and includes the exercise of the surrogate's function to determine all the circumstances concerning the genuineness of a will offered for probate, and the validity of its execution, without reference to whether there is a contest or not; his judicial power arising only after he has determined that the will is genuine and validly executed.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 758–760; Dec. Dig. § 320.*

For other definitions, see Words and Phrases, vol. 4, p. 3634.]

7. WILLS (§ 320*)—PROBATE—SURROGATE'S WITNESSES—EXAMINATION.

While, in a will contest, the surrogate is required to examine surrogate's witnesses, provided the parties demand it, he is nevertheless not deprived of all discretion, and, if satisfied that the testimony of witnesses made "surrogate's witnesses" by notice or order is not material, he may direct them to stand down without violating any right conferred by Code Civ. Proc. § 2618.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 758–760; Dec. Dig. § 320.*]

8. WILLS (§ 320*)—PROBATE—CONTEST—SURROGATE'S WITNESSES—EXAMINATION.

In a will contest the surrogate has no jurisdiction to compel counsel for proponent to examine surrogate's witnesses as a part of proponent's proof against counsel's will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 758–760; Dec. Dig. § 320.*]

9. WILLS (§ 320*)—PROBATE—SURROGATE'S WITNESSES—EXAMINATION—CROSS-EXAMINATION.

Where, in a will contest, surrogate's witnesses were produced by contestants, and proponents after making a prima facie case rested and declined to examine the surrogate's witnesses, it was the duty of the surrogate himself at that time to examine them only to such an extent as would satisfy him of the genuineness of the will and the validity of its execution, permitting either party to cross-examine the witnesses within the scope of the direct examination and then permitting either to make such witnesses his own by asking them such other relevant and material questions as they might desire.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 758–760; Dec. Dig. § 320.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Application for probate of the will of Magdalena Hermann, deceased. On motion to compel proponents to call all of the surrogate's witnesses before resting. Denied.

Gustav Goodmann, of New York City, and Edward Carpel, of Philadelphia, Pa., for proponent.

John B. Quintin, of New York City (James W. Osborne and Gilbert Lamb, both of New York City, of counsel), for contestants.

FOWLER, S. This is a contested proceeding for probate. The counsel for the contestants obtained an order pursuant to section 2618, Code of Civil Procedure, for the examination of about all the important witnesses, including the attesting witnesses, thus making such witnesses what are now known to the profession of the law "surrogates' witnesses." The proponents have called to the stand, examined the attesting witnesses to the paper propounded, and then announced that proponents rested. The contestants by their counsel then insisted that the other "surrogates' witnesses" be examined before contestants be compelled to open their case. Counsel for proponents are unwilling to examine such witnesses, stating that such witnesses are really contestants' witnesses and hostile to proponents. If these witnesses are in fact contestants' witnesses, then by the ordinary rules of evidence contestants would be compelled to call them to the witness stand, with the effect that contestants would be bound by their testimony and not at liberty to impeach such witnesses. By placing all or nearly all contestants' witnesses in the notice and order mentioned contestants claim that such witnesses are no longer contestants' witnesses, but "surrogates' witnesses," and that contestants may impeach them and in effect cross-examine them, putting leading questions to them, and that contestants will not be bound by their unfavorable testimony, although contestants may take advantage of any testimony favorable to contestants. Counsel for contestants also asks that the surrogate direct that proponents, before being allowed to rest, shall put all these witnesses on the witness stand and take their testimony as a part of the proponents' proofs. . These various motions, objections, and contentions present definitely for our consideration the meaning of the statute in question, the course of procedure on the trial when there are "surrogates' witnesses," and the appropriate rules of evidence applicable to testimony given in by such "surrogates' witnesses" on the hearing. It is obvious that contestants in some instances might, if so disposed, reap a very great advantage by placing all their doubtful witnesses in the list of "surrogates' witnesses" in case contestants are not to be bound by the unfavorable testimony of such witnesses, although taking advantage of favorable testimony. And yet this consideration is not controlling.

Several years back a similar situation developed in a probate proceeding in this court, although not so pointedly as in this matter now here. Matter of Hock, 74 Misc. Rep. 15, 25, 129 N. Y. Supp. 196. In Matter of Hock the contestants of their own motion called the "surrogates' witnesses" to the stand without reservation, thereby in effect, as was held,

making such witnesses again contestants' own witnesses and thus taking them out of the category of so-called "surrogates' witnesses." In Matter of Hock the surrogate had occasion to review briefly the pertinent adjudications up to date, and no further adjudications appear to be cited in the elaborate briefs now submitted to the surrogate in this matter. It is obvious that, if all the witnesses in a contested proceeding for probate are made "surrogates' witnesses," the procedure in such a probate proceeding will differ very essentially from that in contentious probates at common law. Now the common law is still more largely regulative of trials and procedure in the other courts of this state than we often think. Was it intended that the effect of the statutes governing "surrogates' witnesses" should be revolutionary and alter the whole course of procedure on trials of issues of fact in this court in probate causes? This is a question very important to orderly procedure in the Surrogate's Court and one, I think, not lightly to be dismissed from consideration. Unfortunately the adjudicated cases do not completely dispose of the question.

It is always well to consider the contemporaneous conditions when the construction of a statute is involved. Prior to the independence of the Crown, procedure in the probate tribunals of the province of New York was largely governed by the ecclesiastical common law and by the practice long observed in the ecclesiastical courts of England. Matter of Hock, 74 Misc. Rep. 26, 129 N. Y. Supp. 196; Matter of Carter, 74 Misc. Rep. 1, 7, 133 N. Y. Supp. 722. This continued to be the case (chapter 12, Laws of 1778) for some time after the Revolution, or at least until the abolition of the Court of Probates in the year 1823 (chapter 70, Laws of 1823), when the ordinary probate jurisdiction devolved on the surrogates, before that time substantially representatives of the Court of Probates, which was then Ordinary. When the courts of the surrogates had become in fact independent tribunals, the surrogates began to vary the procedure before them, according to their own conceptions of modern and ancient law. Then, as was said by a surrogate of a century ago, there resulted as many courses of procedure in the courts of the surrogates as there were surrogates. Kirtland's Treatise on Surrogates, 2. Fortunately the business before the surrogates was at that time merely common form business, and no great harm to the public ensued. In re Gedney's Will, 142 N. Y. Supp. 158, 166, 167. The Revised Statutes of 1830 intended to obviate a defect and to prescribe a uniform course of procedure for the courts of the surrogates (chapter 6, tits. 1, 2, pt. 2, R. S.; chapter 2, tit. 1, pt. 3, R. S., and Revisers' notes to same), and at the same time to limit the jurisdiction and powers of the surrogates under the pre-existing law. With this intention the Revised Statutes provided that "no surrogate shall, under pretext of incidental power or constructive authority, exercise any jurisdiction whatever, not expressly given by some statute of this state." 2 R. S. 221, § 1. The speedy repeal of this last provision of the Revised Statutes in 1837 (chapter 460, Laws of 1837), restored the old common law to the surrogates in so far as it was relevant to proceedings in the courts of New York invested with the for-

mer ecclesiastical jurisdiction. Sipperly v. Baucus, 24 N. Y. 46; Matter of Brick's Estate, 15 Abb. Prac. 12, often approved and cited by the Court of Appeals; Matter of Hock, 74 Misc. Rep. 15, 26, 129 N. Y. Supp. 196; Matter of Meyer, 72 Misc. Rep. 566, 568, 569, 131 N. Y. Supp. 27; Matter of Carter, 74 Misc. Rep. 1, 133 N. Y. Supp. 722; Matter of Work, 76 Misc. Rep. 403, 405, 411, 137 N. Y. Supp. 97; Matter of Connell, 75 Misc. Rep. 574, 578, 136 N. Y. Supp. 166; Matter of Van Ness, 78 Misc. Rep. 592, 601, 139 N. Y. Supp. 485; Matter of Swartz, 79 Misc. Rep. 388, 139 N. Y. Supp. 1105; Matter of Martin, 80 Misc. Rep. 17, 141 N. Y. Supp. 784; Matter of Gedney, 142 N. Y. Supp. 157.

[1] That the testamentary common law since 1837, as before, supplements the Revised Statutes in the courts of the surrogates, is evident from many of the decisions of the highest courts of the state in testamentary causes, for a most extensive use of such common law is made in such decisions. Hardly a leading case in our reports, involving appeals from this court, omits a reference to the old common law affecting the prototype and original of this court.

Originally, as it will be remembered, the ecclesiastical courts of England and the probate courts of New York had no jurisdiction of probate of devises or wills of real property. The Revised Statutes, translating the provisions of earlier New York statutes, permitted devises to be proved in the courts of the surrogates. 2 R. S. 57, §§ 7, 8; 2 K. & R. 179, § 6; 1 R. L. 365, § 6; chapter 27, Laws of 1786; 1 J. & V. 278, § 9. But the act was in this particular permissive and not mandatory. The Revised Statutes provided for the proof of devises before the surrogates with some particularity, and this was not without influence on the subsequent course of probate procedure in Surrogates' Courts. Caw v. Robertson, 5 N. Y. 125, 129.

[2] "Surrogates' witnesses" were not known prior to section 11, c. 460, of the Laws of 1837. Before the Revised Statutes proof of wills was at common law, either in common or solemn form. In order to obtain proof of wills in solemn form, a "caveat" was filed in a book kept for that purpose. Proctor's Practice, 68; Matter of Hock, 74 Misc. Rep. at pages 25, 26, 129 N. Y. Supp. 196. The provisions of the Revised Statutes relating to proof of wills seem, in the first instance, to have had little reference to contentious probates, then very uncommon. As stated above, most of the business in the Surrogate's Court of New York up to the time of the Revised Statutes had been what was known at common law as "common form business" and of no great complexity. In 1837 the Legislature was obliged to supplement the Revised Statutes by a very important amendatory act, regulating more in detail both noncontentious and contentious probates (chapter 460, Laws of 1837). Section 10 of the Act of 1837 provided for noncontentious probates. Only two of the attesting witnesses to a will need be examined if there were no contest.

[3] Section 11 provided as follows:

"In case the proof of any such will is contested, and any person having the right to contest the same shall, before probate made, file with the surrogate a

request in writing that all the witnesses to such will shall be examined; then all the witnesses to such will, who are living in this state, * * * shall be produced and examined."

It is apparent to me that when the old practice by "caveat" had become obsolete or passed away a substitute for it was intended to be furnished by section 11 of the Act of 1837. This and nothing more possibly was intended in the first instance, although the mandatory character of such legislation gives it a broader significance.

In 1841, by chapter 129, the Legislature amended chapter 460, Laws of 1837, so as to make the notice and examination therein provided for "apply to all witnesses, whom any person interested in the proof of a will, shall request to be examined, whether such witnesses be subscribing witnesses to such will or not; provided the surrogate * * * is satisfied that the testimony of the witnesses so requested to be examined, is material." Both the Acts of 1837 and 1841 are now transferred without change to section 2618, Code of Civil Procedure. Matter of Hock, 74 Misc. Rep. at pages 25, 26, 129 N. Y. Supp. 196. The practice under the statutory provisions mentioned above has been several times before the courts of this state, with what effect will be subsequently considered. The Act of 1841, as it will be observed, was only an enlargement of the provisions of the Act of 1837, and it contains no internal evidence that it was intended to have a different effect from the Act of 1837 on the prior procedure and practice in contested probates in the Surrogates' Courts of this state.

[4] It has been since held that, after a notice under the statutes in question, it is error on the part of the surrogate to admit the will to probate without examining the witnesses named in the notice, at least if the parties giving the notice to examine so require it. Matter of Baird, 41 Hun, 89, 93; Hoyt v. Jackson, 2 Dem. Sur. 443, 450; Matter of McGovern, 5 Dem. Sur. 424, 426. These decisions do not to my mind advance one particle the argument founded on the face of the statute itself. They are decisions which treat only of the proper practice to be pursued under the statutes mentioned, and they go no farther than mere matter of practice on the face of a statute. In Hoyt v. Jackson, 2 Dem. Sur. 451, as it will be readily perceived, the arguments of the very eminent opposing counsel, who were concerned in that cause, as to the proper practice to be pursued under the acts, were hopelessly at odds. Mr. Surrogate Rollins, then sitting in this court, rejected the argument that the statutes in question had completely reversed all former procedure in contentious probate proceedings so as to require proponents to give all the proofs and make all witnesses proponents' witnesses, and in this, and I say it with respect, he was, in my opinion, clearly right.

[5] A contentious probate proceeding is and always has been a trial, and a trial in this state is controlled primarily by the common law in the absence of statute. I do not believe that the statutes in question were ever intended to alter the entire practice on trials of issues of facts in the Surrogates' Courts of this state. In Matter of Hock, 74 Misc. Rep. 25, 26, 129 N. Y. Supp. 196. I held that the right

to have the surrogates' witnesses examined might be constructively, or actually, waived by the party giving the notice, and in this I believe I was right. In civil causes a party may always waive a benefit or immunity secured to him by constitutional or legislative enactment. Cancemi v. People, 18 N. Y. 136; Matter of Cooper, 93 N. Y. 507, 512; Foley v. Royal Arcanum, 151 N. Y. at page 202, 45 N. E. 456, 56 Am. St. Rep. 621; Matter of Plumb, 24 Misc. Rep. at page 251, 53 N. Y. Supp. 558.

I am still of the opinion that the intention of the Acts of 1837 and 1841 was to bring about a probate in more solemn form than usually required on the probate of noncontested wills. In other words, the statute was intended to lead to a genuine contentious probate proceeding, and it was not intended to revolutionize the ordinary procedure or law of evidence applicable in trials of issues of fact in probate causes in the Surrogates' Courts, as was contended by counsel in Hoyt v. Jackson, 2 Dem. Sur. at page 452. But as section 11 of the Act of 1837 was part of a reformatory act, it will be necessary to examine the entire scope of that act, now largely reassembled in chapter 18 of the Code of Civil Procedure relating to probate, in order to determine the true meaning of the Acts of 1837 and 1841, now become section 2618, Code of Civil Procedure.

The Act of 1837 was a very comprehensive revision of the part of the Revised Statutes which since 1830 had regulated probate. Section 26, 2 R. S. 61, had provided that the surrogate shall inquire particularly into the facts and circumstances attending the execution of a will of personalty and shall be satisfied of the genuineness and validity of such will before admitting the same to probate. Sections 10 and 18 of the Act of 1837 merely amplified the provision of the Revised Statutes, going somewhat more into detail. In the final revision of the statutes these sections of the Act of 1837 were transferred to section 2622, Code of Civil Procedure, where they now are. It was at first, doubtless, the intention of the revisers of the Revised Statutes and of the amendatory acts specified not only to confer probate jurisdiction on the surrogates, but to prescribe the manner in which such jurisdiction should be exercised. It is in this connection that section 11 of the Act of 1837 (now section 2618, C. C. P.) becomes most important and its construction most clear.

[6] The duties and obligations of a surrogate in respect of testamentary scripts entitled to probate are not in the first instance those of the ordinary common law judge or purely judicial. Measurably, this was so in the old law, and the old law governing probate courts has in some particular been only reinforced or declared by modern statutes. In Matter of Meyer, 72 Misc. Rep. 566, 569, 131 N. Y. Supp. 27, Matter of Carter, 74 Misc. Rep. 1, 6, 133 N. Y. Supp. 722, Matter of Swartz, 79 Misc. Rep. 388, 139 N. Y. Supp. 1105, Matter of Gedney, 142 N. Y. Supp. 157, and Matter of Martin, 80 Misc. Rep. 17, 141 N. Y. Supp. 784, I gave some little consideration generally to the powers and duties of modern surrogates in the existing judicial system of this state. In Matter of Meyer, for convenience, I classified

the surrogates' powers and duties as judicial, administrative, and inquisitorial. The inquisitorial powers were there stated to be at present statutory in origin. Inquisitorial powers are conferred on the surrogate whenever a particular inquest is directed by the statute to be made by the surrogate for his own information or as a preliminary to his official action. It is true that in common-law courts an "inquisition" is often synonymous with trial; but, as stated before, the procedure of this court has some reference to peculiar jurisdictions not of the common law, and the term "inquest" here is to be taken as a term of larger signification than in the common-law courts. Section 2622, Code of Civil Procedure, makes it the duty of the surrogate, for example, before admitting a will to probate, to inquire particularly into all the facts and circumstances concerning the genuineness of a will and the validity of its execution. The origin of this section has been already indicated. No contention is a prerequisite to the invocation of the surrogate's inquisitorial powers; he is bound to exercise them irrespective of contention or the attitude of the parties before him to the probate. As the factum of will is concerned with public law and not with private law, the state imposes on the surrogate the duty of inquiring in every instance, irrespective of the action of the parties, concerning the validity and genuineness of a testamentary script offered for probate. It is not until after the factum of will is prima facie established that the duties of the surrogate become purely judicial, according to the conceptions of the common-law courts. Until factum is prima facie established the surrogate is "procurator reipublicæ," and bound to see to it that a testamentary script is by the public law authentic or bona fide and entitled to the advantages accorded by the public law of this state to perfect testamentary acts. In the same way it is the duty of the surrogate to promote sentence to probate of perfect wills and testaments, and to defeat all attempts to probate imperfect or fraudulent testaments. Only after factum once established do the duties and powers of the surrogate become, in a contested proceeding for probate, purely judicial and subject to review for common-law errors on the ordinary grounds.

[7] It is with reference to the powers and duties indicated in the preceding paragraph that section 2618, Code of Civil Procedure, is to be construed. Section 2618 makes it mandatory on the surrogate to conduct his inquisition as to the genuineness of a testamentary script propounded for probate in the particular way directed by the statute. In probate proceedings the surrogate must conform his action modo et forma to the requirements of section 2618, and it is error if he fail to examine the "surrogates' witnesses," provided the parties demand it (Matter of Baird, 41 Hun, 89), and the surrogate is satisfied that the witnesses are privy to any act of consequence to the genuineness and validity of the testamentary paper brought into court for probate. Matter of Baird, 41 Hun, at page 92; Matter of McGovern, 5 Dem. Sur. at page 426. The statute does not deprive the surrogate of all discretion, and if he himself is satisfied after interrogation that the testimony of the witnesses made "surrogates' witnesses" by notice or

order is not material, he may, I think, in his discretion, direct such witnesses to stand down without violating any right intended to be conferred by the statute on the parties cited. Matter of McGovern, 5 Dem. Sur. at page 426. The examination of surrogates' witnesses is for the purpose of aiding the surrogates on the issue of factum. It is, of course, still open to the parties in the ordinary way to call the witnesses back to the stand as their own witnesses in support of their affirmative pleas.

Having now given the history and construction of section 2618, I come to the practice questions submitted to me: Should I direct the proponent to examine the surrogates' witnesses against their will, as requested by contestants' counsel, proponent having rested after making prima facie proof of factum? It was the opinion of Mr. Surrogate Rollins, generally acknowledged to have been a powerful judge of this court, that he could require counsel for the parties cited on the contested probate to assist him in the examination of the surrogates' witnesses. Hoyt v. Jackson, 2 Dem. Sur. at page 457. I think, however, this expression of opinion by Mr. Surrogate Rollins was intended only as a dictum, rather than as his decision of a very important practice question. Had it been his decision, I should of course have felt bound to follow it, as judicial comity and orderly procedure compel judges of the same court to bow to the prior decisions of their own court, except in those rare cases where the decision or judgment violently conflicts with their individual conscience. Finlay v. Darling, 1897, 1 Ch. 719, 723. Now a contested probate in this court is a "trial," and, while in some few particulars such trial is governed by rules peculiar to this court, it is the general understanding that the conduct of a trial here is now subject to the ordinary law governing trials of issue of fact in other courts of record of this state. The judicial powers of judges of courts of record in ordinary trials are entirely defined by law. I know of no power or authority in a judge of a court of record to direct counsel to take a procedure against their own will or inclination on a trial.

[8] The customary and essential freedom of the bar, precedent, and authority are all against such a power in a judge of any court of record of this state. The rights of the bar are as well defined as the powers of the judge. I am satisfied that constitutionally I ought not to direct counsel against their will to examine "surrogates' witnesses," and I will not undertake to do so. Matter of Hock, 74 Misc. Rep. at page 29, 129 N. Y. Supp. 196. The freedom of the bar would in my judgment be unjustly and illegally invaded by any such direction on a trial as that moved by contestants and now resisted by proponent. Every trial in a court of justice is the application of the public peace and dignity to private contention, and any construction of a statute which violates orderly procedure is an invasion of the peace and dignity of the state. It was very lately said by our Court of Appeals that:

"It should always be presumed that no unjust or unreasonable result was intended by the Legislature." Matter of Meyer, 209 N. Y. 386, 103 N. E. 713.

[9] I venture to believe that the proper time for the examination of "surrogates' witnesses" is before the contestants open their case,

and after the proponent has examined the attesting witnesses. The duty of producing "surrogates' witnesses" for examination by the surrogate falls in the first instance on the proponent. Matter of McGovern, 5 Dem. Sur. 424, 426; Hoyt v. Jackson, 2 Dem. Sur. 450, 456; Matter of Baird, 41 Hun, 89, 93. That point is decided and at rest in this court.

This being so, the next question presented for our consideration is: On whom does the duty rest to examine "surrogates' witnesses"? I have no doubt on this score, for it is determined both by statute and authority binding on me. Sections 2622, 2618, C. C. P. As "surrogates' witnesses" are part of the statutory inquisition mentioned before, and the information derived from them is solely for the surrogate's own conscience, it is the duty of the surrogate himself to examine "surrogates' witnesses," but only to such an extent as will satisfy him of the genuineness of the will and the validity of its execution. Matter of Baird, 41 Hun, at page 93; Hoyt v. Jackson, 2 Dem. Sur. at page 457; Matter of McGovern, 5 Dem. Sur. at page 426. Thus far and no farther is it contemplated that the surrogate's independent inquiry shall extend. The surrogate is not bound, and indeed ought not, to interrogate the surrogates' witnesses in support of affirmative pleas set up by contestants, such as undue influence and fraud. When the surrogate has himself inquired of "surrogates' witnesses" concerning their knowledge of the testamentary paper, the act of testamentation and the other elements going to make up what is technically called "factum," all the parties in court or cited have a right to cross-examine the witnesses. Such a right of cross-examination inheres in any party under our law on any inquisition or proceeding (except on the grand inquisition of the county) if testimonial evidence is given in an issue of fact. But it would, I hold, be a great error and subversive of orderly procedure on a trial of an issue of fact to permit counsel under the guise of cross-examination to conduct an independent investigation or inquisition of their own. The cross-examination of surrogates' witnesses should be governed by what is called the domestic or "New York rule," which confines cross-examination to matters developed in the course of the original examination. Beyond that scope the cross-examiner should be advised that he makes the "surrogates' witnesses" his own, and is bound by the ordinary rules applicable in trials of issues of fact in this state to the examination of witnesses under oath. After proper cross-examination concluded the surrogate may, I think, direct in his discretion the "surrogates' witnesses" to stand down, with leave to the cross-examiner to call the witness as his own in support of any affirmative pleas of undue influence, or insanity, or fraud interposed to the probate. Any other course than that indicated makes a very disorderly trial in a Surrogate's Court. I have adopted the course indicated since I came here, and, whatever its defects, it is certainly productive of order and peace on the trial. I believe it to conform also with the law and the true intention of the statute makers.

Proceed accordingly, with leave to any party to except to the rulings or any of them herein contained.