In the Matter of Proving the Last Will and Testament of MARTHA H. BEEMAN, Deceased.

——————————————————, Appellants; ——————————————, as Executor, etc., of MARTHA H. BEEMAN, Deceased, Respondent.

Fourth Department, June 28, 1927.

Wills — probate — preliminary examination of subscribing witnesses under Surrogate's Court Act, § 141 — will left large estate to attorney, who drew will, with direction to divide it among public charitable or educational institutions — three prior wills almost identical had been executed — request of certain next of kin for production of prior wills should have been granted — order denying production is appealable under Surrogate's Court Act, § 288.

On a preliminary examination of the subscribing witnesses for the purpose of probating the will of the decedent, certain next of kin of the decedent demanded the production of three prior wills which were in the possession of the proponent, an attorney, who drew the will offered for probate. The surrogate had the power, under section 141 of the Surrogate's Court Act, to require the production of the prior wills, and it was error for him not to do so, since it appears that the will in question devised the entire estate of the decedent to her attorney for distribution among such public charitable and educational institutions as the attorney might select, and that the three prior wills were almost identical in terms, and that the attorney testified that the motive actuating the execution of subsequent wills was to show that the testatrix still continued her desire for the distribution of the property to charitable and educational institutions in preference to her relatives.

Under the circumstances, the next of kin had the right to inspect the prior wills, and the denial of that right was the denial of a substantial right within the meaning of section 288 of the Surrogate's Court Act, and, therefore, the order, denying the application, is appealable.

SEARS and SAWYER, JJ., dissent.

APPEAL by certain next of kin of Martha H. Beeman, deceased, from an order of the Surrogate's Court of the county of Niagara,

entered in the office of said Surrogate's Court on the 12th day of March, 1927, denying the application of appellants for an order directing the proponent of decedent's will to produce upon the examination of subscribing witnesses to said will all former wills of said decedent in the possession of proponent.

*William H. Ross* [*Hamilton Ward* of counsel], for certain appellants.

*Judson, Holley & Andrews*, for the appellant Van Vranken.

*Edwin C. Redfern*, for the appellants Plass and Gilmore.

*Cohn, Franchot, Runals & Robillard* [*Clarence R. Runals* of counsel], for the proponent, executor.

CLARK, J.   By the order appealed from the surrogate of Niagara county limited the scope of the preliminary examination of one of the subscribing witnesses to the will of Martha H. Beeman, deceased, and denied the request of certain of her next of kin for the production on said examination of three prior wills executed by decedent, which were in possession of the proponent of the last will, who was also a subscribing witness to it, and who also drew the three prior wills of testatrix.

A preliminary examination of the subscribing witnesses to the proposed will was taken in pursuance of section 141 of the Surrogate's Court Act.   That section so far as pertinent is as follows: " Before a written will is admitted to probate, two, at least, of the subscribing witnesses must be produced and examined, if so many are within the State, and competent and able to testify   *   *   *. Any party to the proceeding, before filing objections to the probate of said will, may request the oral examination of the subscribing witnesses thereto and may examine such witnesses and any other witness produced by the proponent before the surrogate, without first filing objections to the probate of such will."

There were three subscribing witnesses to the will in question, one of whom was the lawyer who drew the will, and who by its terms was named as executor and trustee thereof.

The proposed will was dated September 28, 1926, and purports to have been executed in Los Angeles, Cal.   The fact was, however, that it was actually executed in the city of Niagara Falls, N. Y.

The powers of the trustee were defined in the disposal·clause of the will as follows: " I give, devise and bequeath all my property of whatsoever name, nature or description and wherever situate, to my executor hereinafter named, in trust, nevertheless, to donate and distribute the same in my name, within two years after the probate of this will and the last judgment and decree entered

for such probate, to such public charitable or public educational institutions, associations, funds or enterprises in the State of New York as he shall select as most worthy and most in need of assistance, in such proportions as he shall deem best."

The will was executed some three months before the death of testatrix. The other subscribing witnesses were employees of the executor. This same attorney had drawn three other wills for decedent, and at the time of the preliminary examination said wills were in his possession.

By the terms of the first will drawn in 1921, the son of one of decedent's next of kin was named as executor. In the second and all subsequent wills the attorney who drew them was named as executor and trustee.

On the preliminary examination these subscribing witnesses testified that all the wills were substantially alike with the exception of the change in executor, and the word "public" being placed before the words "charitable and educational institutions" in the last will, but in all other respects the wills were alike.

The attorney testified that the reason for making the last will was as follows: " Q. What was the occasion for making a new will? A. I explained to Mrs. Beeman that a will such as this to an attorney such as myself was a slightly unusual way of leaving property and I asked her to pick her charities and she said she was not ready to do so yet, the charities to which she wanted to leave this. I told her I wanted her to make a new will, because I wanted to have evidence that this was her continued intention about leaving her will in this way, so that I wouldn't be criticised of having held a will of hers locked up in the safe when she forgot it. The wills were executed to show her continued intention to leave her property in this way."

During the preliminary examination of proponent counsel for the next of kin asked him to produce the prior wills which were concededly in his possession. Objection was made by counsel for proponent. After protracted discussion the learned surrogate denied the motion, holding that on a preliminary examination held in pursuance of section 141 of the Surrogate's Court Act, a witness could not be compelled to produce prior wills under a subpoena *duces tecum*, and that he could not by order compel the production of documents at the demand of contestants the production of which could not be compelled by subpoena.

I think the construction placed on section 141 of the Surrogate's Court Act by the learned surrogate was too narrow.

The facts in this case were unusual and exceptional. The testatrix by the terms of this will ignored the natural objects of her bounty

and left her entire estate, consisting of over $500,000 in personal property, to the attorney who had drawn her wills, in trust to donate and distribute her property to such public and charitable or educational institutions, etc., as he should deem best. Under the circumstances the next of kin were entitled to inspect the prior wills to ascertain from inspection whether the signatures by testatrix had changed between the making of the several wills and that they had a right to inquire fully about the circumstances of making these wills and to compare them with the will in question so that by inspection of the documents themselves it could be ascertained whether or not they were alike, and whether the last will evinced the " continued intention " of testatrix to dispose of her property to charities to the exclusion of her next of kin, and clothing her attorney with sole power to select the charities that were to share in the fund. To deny the next of kin this right of inspection of the former wills and further examination of the person who drew them, denied to the next of kin a substantial right, and the order is appealable. (Surrogate's Court Act, § 288.)

It was the duty of the surrogate to inquire into all the facts and circumstances surrounding the making of the proposed will. (Surrogate's Court Act, §§ 141–144.)

The will in question was copied from former wills. How could the facts and circumstances be fully inquired into without an inspection of the wills from which the proposed will was copied?

The next of kin were entitled not only to examine the subscribing witnesses, but the will having been copied from former wills, they were entitled to an inspection of said wills either before or after filing objections (*Matter of Woerz*, 174 App. Div. 430) and in aid of cross-examination of the witnesses as to matters pertaining to the proposed will and its execution. (*Matter of Hermann*, 83 Misc. 283, 296.)

The statute should be liberally construed to the end that interested parties can have full examination of subscribing witnesses and inspection of prior wills, which it is claimed were practically like the will in question. The importance of a liberal construction of the statute is emphasized in this case because of the fact that this large estate is diverted from those who would naturally be the objects of the bounty of the testatrix, and placed exclusively in the hands of the party in whose behalf resistance is made to the production of the former wills.

The circumstances surrounding the making and execution of this will, and the fact that testatrix left practically her entire estate in the hands of a lawyer to distribute among charities as he saw fit, excluding her next of kin, created an exceptional situation,

and I think in the interests of justice the next of kin should have been permitted to inspect the former wills, that they might then determine whether or not formal objections to the probate would be advisable.

The order appealed from should be reversed on the law and facts, with ten dollars costs and disbursements payable out of the estate, and the matter remitted to the Surrogate's Court with directions to enter an order for the production of former wills, and for further examination of the subscribing witness who drew them, in accordance with the terms of this opinion.

All concur, except SEARS and SAWYER, JJ., who dissent and vote for affirmance. Present — HUBBS, P. J., CLARK, SEARS, CROUCH and SAWYER, JJ.

Motion to dismiss appeal denied. Order entered March 12, 1927, reversed, with ten dollars costs and disbursements, and matter remitted to the Surrogate's Court with directions to proceed in accordance with the opinion.