In the Matter of the Probate of the Last Will and Testament of
GEORGE C. HAWLEY, Deceased.*

Surrogate's Court, Albany County, February 14, 1929.

*A. Page Smith*, for the proponents.

*Wiswall, Walton, Wood & MacAffer*, for Sarah F. Poulton.

*Robert J. Laffin* [*Michael D. Reilly* of counsel], special guardian.

Schenck, S. The decedent, George C. Hawley, died a resident of Albany county, possessed of an estate consisting of real and personal property of the estimated value of upwards of $2,000,000. Two instruments purporting to be a will and a codicil thereto and here offered for probate dispose of the bulk of the estate to decedent's nurse, his physician, various charitable institutions, friends and employees. His two heirs at law and next of kin are bequeathed $5,000 and $2,500, respectively, but no other beneficial interest in the estate. The instrument contains an *in terrorem* clause precluding from any benefit under the will any beneficiary therein named who shall oppose its probate.

The special guardian, representing unknown heirs at law and next of kin, conducted a preliminary examination of the subscribing witnesses, which examination developed the fact that at the time of execution of the alleged will and codicil, the decedent was practically blind and could not read the instruments which he at that time signed and which are here offered for probate. Further, that the said instruments were not read to the decedent in the presence of the subscribing witnesses, but that decedent said that the instruments had been read to him, but did not say by whom.

At this preliminary examination of the subscribing witnesses, the proponents of the will were asked by the special guardian to produce prior wills of decedent, in reply to which request, one of the proponents, the attorney who supervised the executions of the instruments, stated that proponents would not produce any former wills unless ordered to do so by the court.

It appears from affidavit of Mr. Reilly, formerly counsel for one of the next of kin but now acting as counsel for the special guardian, that Mr. Smith, one of the proponents and as well attorney for proponents, stated to him that it would be useless to defeat the probate of the instruments offered for probate, for the reason that there were other testamentary instruments in existence. Mr. MacAffer, representing the other next of kin, also files affidavit setting forth that Mr. Smith stated to him that he had in his possession and control one or two other wills of decedent executed prior to the instruments offered for probate, but permission to examine the same was refused by proponents.

The special guardian maintains that the statement of a blind man that he has heard read an instrument produced as his will is of little probative force without some independent proof by someone who can see, identifying the particular instrument which he avers was read to him, which proof is lacking in this proceeding. The special guardian further points out that the production of the previous wills would, if such wills show a general testamentary

intent in conformity with the will offered for probate, be of material assistance in determining whether to file objections to the probate of the alleged will and codicil.

Proponents contend that this proceeding for the examination of subscribing witnesses under section 141 of the Surrogate's Court Act limits the examination to that of the subscribing witnesses.

Section 141 of the Surrogate's Court Act provides that any party to the proceeding, before filing objections to the probate, may examine the subscribing witnesses and any other witness produced by proponent. However, under section 144 of the Surrogate's Court Act, before admitting a will to probate, the surrogate must inquire particularly into all facts and circumstances and must be satisfied with the genuineness of the will and the validity of its execution; and not until he is satisfied that the will was duly executed and that the testator was in all respects competent to make a will and under no restraint, may he admit it to probate. In order that it may be effective, the statute must be given a liberal construction.

It has been held that all facts and circumstances surrounding the making of a will shall be inquired into by the surrogate, and that under certain circumstances and in particular situations, the next of kin are entitled to an inspection of prior wills and the right to inquire fully into the circumstances of the making of such prior wills, and, as well, to compare them with the present will for the purpose of ascertaining whether they are alike and whether they evidence a continued intention to dispose of property to charities, to the exclusion of next of kin. (*Matter of Beeman,* 221 App. Div. 129.)

While the *Beeman* case differs in some respects from the present proceeding, nevertheless, the court squarely held that the statute should be liberally construed and that to deny the next of kin the right to an inspection of the prior wills was a denial to them of a substantial right. In that case a preliminary examination of the witnesses to the proposed will was had under section 141 of the Surrogate's Court Act. There were three subscribing witnesses, one of whom was a lawyer who drew the will and who by its terms was named executor and trustee. Decedent gave all of her property to this executor, in trust, to distribute to such public charitable or educational institutions as he should select. During the preliminary examination, counsel for the next of kin called upon proponent to produce prior wills then in his possession. The surrogate held that on a preliminary examination under section 141, he could not by order or subpœna *duces tecum* compel the production of these former wills. The Appellate Division,

Fourth Department, reversed the order of the Surrogate's Court and remitted the matter to that court, directing an order for the production of the former wills. CLARK, J., writing the opinion, says (pp. 131, 132):

" I think the construction placed on section 141 of the Surrogate's Court Act by the learned surrogate was too narrow.

" The facts in this case were unusual and exceptional. The testatrix by the terms of this will ignored the natural objects of her bounty and left her entire estate, consisting of over $500,000 in personal property, to the attorney who had drawn her wills, in trust to donate and distribute her property to such public and charitable or educational institutions, etc., as he should deem best. Under the circumstances the next of kin were entitled to inspect the prior wills to ascertain from inspection whether the signatures by testatrix had changed between the making of the several wills and that they had a right to inquire fully about the circumstances of making these wills and to compare them with the will in question so that by inspection of the documents themselves it could be ascertained whether or not they were alike, and whether the last will evinced the ' continued intention ' of testatrix to dispose of her property to charities to the exclusion of her next of kin, and clothing her attorney with sole power to select the charities that were to share in the fund. To deny the next of kin this right of inspection of the former wills and further examination of the person who drew them, denied to the next of kin a substantial right, and the order is appealable. (Surrogate's Court Act, § 288.)

" It was the duty of the surrogate to inquire into all the facts and circumstances surrounding the making of the proposed will. (Surrogate's Court Act, §§ 141–144.) "

Again, emphasizing the importance of affording a liberal construction of the statute where the circumstances surrounding the making and execution of a will create an exceptional situation, the court continues (pp. 132, 133):

" The statute should be liberally construed to the end that interested parties can have full examination of subscribing witnesses and inspection of prior wills, which it is claimed were practically like the will in question. The importance of a liberal construction of the statute is emphasized in this case because of the fact that this large estate is diverted from those who would naturally be the objects of the bounty of the testatrix, and placed exclusively in the hands of the party in whose behalf resistance is made to the production of the former wills.

" The circumstances surrounding the making and execution of this will, and the fact that testatrix left practically her entire estate

in the hands of a lawyer to distribute among charities as he saw fit, excluding her next of kin, created an exceptional situation, and I think in the interests of justice the next of kin should have been permitted to inspect the former wills, that they might then determine whether or not formal objections to the probate would be advisable."

In the present proceeding we have an exceptional situation. Here a man practically blind and unable to read an instrument presented to him for signature, signs the same in the presence of three subscribing witnesses, stating to them that the instrument had been read to him, but failing to state by whom, which instrument by its terms disposes of a very large estate, the bulk of which is given to charities, friends and acquaintances, substantially to the exclusion of his next of kin, who benefit to a comparatively meager extent. Seemingly, here are circumstances which create such an " exceptional situation " that in the interest of justice an inspection of the former wills should be permitted. Moreover, the effect of the *in terrorem* clause, precluding from any benefit under the will a beneficiary who shall oppose its probate, must be considered. While ordinarily such a clause in a will may not give rise to an unusual or exceptional situation, when considered in the light of the other circumstances surrounding the making and execution of the proposed will, a situation is created where, as in *Matter of Beeman*, the importance of a liberal construction of the statute becomes apparent in the interest of justice. If there are prior wills in the possession or control of proponents who are in no way related to decedent, it is important to the next of kin that they be informed of their contents that they may determine whether or not objections should be filed. An inspection of these wills might well satisfy the special guardian and the next of kin of the futility of a contest and thus obviate an expensive litigation. To deny such inspection would affect a substantial right of the next of kin. Furthermore, it is the duty of the special guardian to ascertain, if possible, whether or not there are heirs at law or next of kin of the decedent living, and an inspection of these prior wills may indicate that there are now living such heirs and next of kin who have not been cited in this proceeding. A liberal construction of the statute indicates to me that a direction for the production of the prior wills is warranted.

The proponents of the will here offered for probate are directed to produce any former wills of George C. Hawley, the decedent herein, which are in their possession, under their control or which they have reason to believe are in a safe deposit box of said decedent.

Decree may be entered accordingly.